EX PARTE L. GARLAND BIGGERS.

Opinion Filed March 15, 1923.

1. The general common law 'of England is in force in this State except where it is "inconsistent with the constitution and laws of the United States and the acts of the legislature of this State."

2. At common law in contempt proceedings for matters "of which the court cannot have knowledge, unless by the confession of the party or the testimony of others, if the judges upon *affidavit* see sufficient ground to suspect that a contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him, 'or, in very flagrant instances of contempt, an attachment issues in the first instance."

3. At common law in contempt proceedings "if the party can clear himself upon oath, he is discharged; but, if perjured, may be prosecuted for the perjury. If he confesses the contempt, the court will proceed to correct him by fine or imprisonment, or both."

4. In contempt proceedings at common law the general rule is that if the matters complained of were not perpetrated in the presence of the court or judge or so near the court or judge as to impede or embarrass judicial procedure, the rule issued to the accused to show cause why he should not be punished for contempt, should be predicated upon affidavits of those who have personal knowledge of the facts alleged as the contempt.

5. In contempt proceedings if the charges duly made are admitted to be true and they clearly constitute contempt whether so intended, or not, appropriate punishment follows. If the matters charged and admitted to be true are ambiguous or do not clearly constitute contempt, and an intent to offend is duly denied under oath, a discharge from custody follows. If the matters charged are denied under oath and the denial is false, prosecution for perjury is the remedy.

6. The right to make fair comments and criticisms of official conduct, does not warrant or excuse offensive statements reflecting upon officials as such; but unless acts or words of criticism or condemnation affecting a judicial officer not perpetrated in or near his presence when acting judicially, are of such a nature and occur under such circumstances as to offend the court as such to hinder or embarrass the ordinary discharge of judicial functions, such acts, words or other con-

duct do not in general warrant imprisonment as for contempt of court. See *Ex Parte* Earman, decided this day.

7. A Circuit Judge is expected to be a man of ordinary firmness of character; and if the matter complained of as constituting contempt, when fairly interpreted, does not have a reasonable tendency to degrade or to embarrass or hinder such a judge in performing his own duty, or to affect a mind of reasonable fortitude it is not a criminal contempt for which imprisonment may be lawfully adjudicated, particularly when an intent to offend is denied on oath.

8. Generally it is the nature and reasonable tendencies of the matter complained of as a contempt that controls; and if the matter is of doubtful tendency or might or might not be considered ambiguous as to its general or specific purpose, the circumstances under which the thing was done or in which its consequences are to appear, may be considered in determining the reasonable tendency of the matter to affect judicial authority or dignity; and express denials of a desire or an intent to offend, when duly supported or corroborated by pertinent circumstances may be considered in determining the real nature and reasonable tendency of the matter complained of as being calculated to affect the functions of the court.

9. Where a person in a public speech in another county and Circuit makes statements that may be construed as a reflection upon a Circuit Judge but disclaims on oath any intention to reflect on the court or judge and it does not appear that the statements made had a real tendency to embarrass the judge in performing his judicial functions, and the party denies on oath any responsibility for or participation in the publication of the statements in a newspaper that circulated in the home county of the judge, an imprisonment as for contempt should not be adjudged.

A case of original jurisdiction.

Petitioner discharged.

*J. B. Hodges, Frank A. Pettibone* and *Sydney H. Diamond,* for Petitioner;

*Blackwell, Donnell & McCracken, H. J. Quincey, C. E. Chillingworth, Edgar C. Thompson, George W. Coleman, Bert Winters, D. L. Southard, Ray Griffin, Roebuck & Roebuck, John Ziegler, James O. Watson, L. R. Baker, Sidney J. Catts, Jr., C. D. Abbott* and *C. L. McCoy,* for Respondents.

## STATEMENT.

In a petition filed in this court L. Garland Biggers alleges that he is illegally and unlawfully detained and deprived of his liberty by the Sheriff of Palm Beach County, Florida; that a rule and an amended rule were issued by the Judge of the Fifteenth Judicial Circuit against the petitioner here charging him with contempt of court, in which amended rule it is alleged that there was "on the 1st day of February, A. D. 1923, and still is, pending before the Circuit Court of the Fifteenth Judicial Circuit of Florida, in and for Palm Beach County and being considered and under advisement by the Honorable E. C. Davis, as Judge of said Circuit Court, a certain case wherein one Edwin Antoles sought and is seeking by writ of *habeas corpus* to get his release from custody having been taken in custody by the Chief of Police of the City of West Palm Beach, Florida, because of a judgment of conviction in the Municipal Court of the City of West Palm Beach, Florida, and

"Whereas, many other cases were on the 1st day of February, A. D. 1923, and still are, pending before said Circuit Court and are under consideration by the said E. C. Davis as judge thereof, which have been brought to

said Circuit Court by writ of error from the Municipal Court of the City of West Palm Beach, Florida, and

"Whereas, you, the said L. Garland Biggers, did, on the 1st day of February, A. D. 1923, make a speech before the Florida League of Municipalities at Miami, Florida, in which you did say in the presence and hearing of many and divers persons and cause to be published the words spoken by you in the Miami Daily Metropolis, the issue of Friday, February 2nd, 1923, the said Miami Metropolis being a daily newspaper of general circulation throughout the State of Florida and having a large circulation in West Palm Beach, Florida, and throughout Palm Beach County, Florida, the words imputed to you and declared to have been spoken by you which are contained in the following article or publication in said newspaper, to-wit:

" 'PALM BEACH CIRCUIT JUDGE WEAK AS WATER SAYS MAYOR BIGGERS'."

" 'Wants Remedy From Legislature So Municipal Cases Can Be Appealed From Circuit Court Decision'."

" 'Declaring that 'we have a circuit judge who is as weak as water' Mayor L. G. Biggers of West Palm Beach threw a bomb into the meeting of the Florida League of Municipalities yesterday when he asked the meeting if it would be possible to ask the State legislature to amend the State law so there can be an appeal from his decision in cases carried up from the municipal court.

"Mayor Biggers said that he made the statement about the judge, whose name he did not give, 'without fear of being in contempt,' as he expressed it.

"Mr. Biggers cited a recent instance in which he declared that a white man who was found in a disorderly resort in West Palm Beach pleaded guilty in municipal court and was sentenced to pay a fine of $200 and serve 30 days in jail.

" 'I am not a lawyer,' explained Mr. Biggers, 'and do not know how it was done but the man took the case to the Circuit Court on a writ of error or something of that sort and expressed a willingness to take his medicine. Notwithstanding the fact that he had pleaded guilty in the municipal court, the case was then thrown out. Our court is absolutely annulled if a man has money and influence.

" 'I am a republican and so is the judge of whom I speak but that makes no difference. He is a candidate for some high judgeship, I understand'." And * *

"Whereas, that you may be advised more particularly of the words spoken and published by you, to which exception is taken, and your attention is especially directed, you are advised as follows:

1.

"That on the 1st day of February, A. D. 1923, you, in making a speech before the Florida League of Municipalities at Miami, Florida, did use certain words in the presence and hearing of many and divers persons and cause them to be published in the said Miami Daily Metropolis of the issue of Friday, February 2nd, 1923, which said words are as follows: 'We have a circuit judge who is weak as water;' you, the said L. Garland Biggers, meaning by said words to refer to the said Circuit Court of the State of Florida, in and for Palm Beach County, and to E. C. Davis as Judge of said Circuit Court, which mean-

ing was well understood by all those who heard and read said words; and you, the said L. Garland Biggers, further meaning and intending thereby to reflect upon and impugn the integrity of the said Circuit Court and of the said E. C. Davis as Judge thereof, and to create a distrust in the minds of the citizens of Palm Beach County, Florida, and State of Florida, for said Circuit Court and for the said E. C. Davis as Judge thereof; and you, the said L. Garland Biggers, further meaning and intending to prevent a fair and impartial action of the said Circuit Court and E. C. Davis as Judge thereof in disposing of the said case of Edwin Antoles and all other cases pending before the said Circuit Court on writ of error from the said Municipal Court.

2.

"That on the 1st day of February, A. D. 1923, you, the said L. Garland Biggers, in making a speech before a meeting of the Florida League of Municipalities at Miami, Florida, did utter certain words in the presence and hearing of divers persons and cause them to be published in said Miami Daily Metropolis of the issue of Friday, February 2nd, 1923, which said words are as follows: 'Our court is absolutely annulled if a man has money and influence;' you, the said L. Garland Biggers, meaning by said words to say and charge that the said Circuit Court and the said E. C. Davis as Judge thereof could be reached by money and influence and that he would dispose of matters pending before him on account of a man's money and influence and not upon the merits of such cases, which meaning was well understood by all those who heard and read said words; you, the said L. Garland Biggers, meaning further by said words to reflect upon and impugn the integrity of the said Circuit Court and of the said E. C.

Davis as Judge thereof, and to create a distrust for said Circuit Court and for said Judge in the minds of the citizens of Palm Beach County, Florida, and citizens throughout the State of Florida, and you, the said L. Garland Biggers, meaning further by said words to prevent a fair and impartial action of the said Circuit Court and of the said E. C. Davis as Judge thereof in disposing of said case of Edwin Antoles and other cases pending before said Circuit Court on writ of error from said Municipal Court.

3

"On the 1st day of February, A. D. 1923, you, the said L. Garland Biggers, in making a speech before the Florida League of Municipalities at Miami, Florida, did speak certain words in the presence of many and divers persons and caused said words to be published in the said Miami Daily Metropolis of the issue of Friday, February 2nd, 1923, which said words are as follows: 'I speak said words without fear of being in contempt;' you, the said L. Garland Biggers, meaning by said words that you were not in any fear of being ruled for contempt of court by the said Circuit Court and by the said E. C. Davis as Judge thereof, which said meaing was well understood by all persons who heard and read said words; you, the said Garland Biggers, meaning further by said words to dare the said Circuit Court to rule for contempt, and to intimidate said Circuit Court in the administration of justice and to make it appear that said Circuit Court and the said E. C. Davis, as Judge thereof, was 'weak as water' and that he did not dare rule you for contempt; and you, the said L. Garland Biggers, meaning further by said words to reflect upon and impugn the integrity of the said Circuit Court and of the said E. C. Davis as Judge thereof, and to create a dis-

trust for said Circuit Court and for the said E. C. Davis, as Judge thereof, in the minds of the citizens of Palm Beach County, Florida, and other citizens throughout the State of Florida; and you, the said L. Garland Biggers, meaning further by said words to prevent and prejudice a fair and impartial action of said Circuit Court and of the said E. C. Davis, as Judge thereof, in disposing of said case of Edwin Antoles and other cases pending before said Circuit Court on writ of error from said Municipal Court.

"THESE ARE, THEFORE, to command you, the said L. Garland Biggers, to be and appear before the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida, at the Circuit Court Room in the Court House of Palm Beach County, Florida, at 10:00 o'clock A. M. on Tuesday, February 6th, 1923, and then and there show cause, if any you have, why you should not be held and adjudged to be in contempt of said Circuit Court and then and there have you this writ.

DONE, ORDERED AND ADJUDGED at West Palm Beach, Florida, this the 6th day of February, A. D. 1923.

E. C. DAVIS,
Judge Circuit Court Palm Beach County, Fla.''

That a motion to quash the rule containing a ground that many of the acts of respondent alleged therein to constitute a contempt of this court were not within the personal knowledge of the Judge of this court, and information concerning said acts must have been obtained from third parties, but there is no affidavit or affidavits, or sworn statement or statements shown as a foundation for said alleged constructive contempt, nor have any copy or copies of such affidavit or affidavits been served upon the respondent herein,'' was denied; and that the respondent by answer ''denies that on the first day of February,

A. D. 1923, there was pending, or that there is still pending in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, before Hon. E. C. Davis, Judge of said court, a certain case entitled State of Florida vs. Edward Antoles, which is on petition for writ of *habeas corpus,* and attacking the validity of the judgment of the Municipal Court of the City of West Palm Beach, Florida, but respondent avers that on the 29th day of January, A. D. 1923, said Antoles was released in said proceedings by the said Judge E. C. Davis, and a final judgment releasing said prisoner was made in said cause, and that Leonard Bailey, Chief of Police, was ordered to release said Antoles on said date, and said Chief of Police did in obedience to said order, release said Antoles on said date.

2.

"Respondent denies that he knew that any similar cases on writ of error from the Municipal Court of the City of West Palm Beach, Florida, were on said date, February 1, 1923, or still are, pending before said court and were under consideration, or were to be taken under consideration by E. C. Davis, Judge of said court, on said date.

3.

"Respondent admits that on said date he did make a speech in Miami, Florida, before the Florida League of Municipalities, but denies that he caused portions or any part of said speech to be published in the Miami Daily Metropolis of the issue of Friday, February 2, 1923, and avers that he did not even know that a reporter of the Miami Daily Metropolis or any other newspaper was present at said session of the Florida League of Municipalities.

### 4.

"Respondent denies that said publication in said paper is a correct statement of what he said in his speech before the League of Municipalities in said article, said statements which respondent admits being as follows: 'We have a Circuit Judge who is as weak as water;' That he made the statement about the Judge 'without fear of being in contempt;' that he 'cited a recent instance in which he declared a white man who was found in a disorderly resort in West Palm Beach plead guilty in Municipal Court, and was sentenced to pay a fine of One Hundred Dollars and serve thirty days in jail;' 'I am a republican and so is the Judge of whom I speak, but that makes no difference. He is a candidate for some high judgship, I understand.'

"And respondent states that he did say in said speech that said man who was convicted in the Municipal Court had expressed his willingness to take his medicine in the Municipal Court, but that afterwards this man took his case to the Circuit Court on a writ of error, or something of that sort and the case was thrown out in the Circuit Court, and that respondent further stated in said speech that our municipal court is absolutely annulled if a man has money and influence.

### 5.

"Respondent further answering states that statements made by him in said speech were not intended to prejudice and prevent a fair and impartial trial in said case of Edward Antoles, as said cause had been fully determined in so far as respondent knew, and that said statements were merely a fair critisism of the action of the

court and its judgment in so releasing said Edward An-toles, and respondent denies that said statements made by him in said speech were intended to prejudice or pre-vent a fair and impartial trial of other cases pending and to come before the said court on an appeal from the muni-cipal court of West Palm Beach, Florida, but that said statements were made with the desire that there should be a fair and impartial trial in all cases that might come before the Circuit Court on appeal from the Municipal Court of the City of West Palm Beach, Florida.

6.

Said respondent denies that the statements made by him in said speech were intended to influence the judicial ac-tion of the Hon. E. C. Davis, Judge of the said Circuit Court, with respect to the said case of Edward Antelo, or any other cases pending before said court on appeal from the Municipal Court of the City of West Palm Beach, Florida, by threats or intimidation, and denies that he made any threats or intimidation concerning said matter.

7.

''Respondent alleges that said E. C. Davis, Judge of the Circuit Court, was at the time of respondent's said speech, and still is a candidate for the position of Judge of the United States District Court for the Southern District of Florida, and that respondent's statement concerning the said Judge were a fair criticism of previous actions of the Judge of this Court, and were made in a discussion of the qualifications of the said Judge of this Court for the judi-cial.position for which he is a candidate, and that such statements were not made to defame the court or reflect upon or impugn its integrity.

8.

"Further answering, said respondent alleges that the said Circuit Court of the Fifteenth Judicial Circuit of the State of Florida in and for Palm Beach County, was not in session in a term thereof during any of the times mentioned in said rule or order to show cause, or at the time of the issuance of said order, but on the contrary, that said court was in vacation during all of said times, and respondent avers that on Saturday, November 11, A. D. 1922, the Special Fall term of said Circuit Court was adjourned without date, and that said Circuit Court has not been in session from said time up to now.

9.

"Further answering, said respondent denies that he meant by the words 'I speak said words without fear of being in contempt;' that he dared the said Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to rule him for contempt, or that he intended to intimidate said court in the administration of justice, or that he intended to make it appear that said Circuit Court and the said E. C. Davis as Judge thereof 'was weak as water,' and that thereby he did not dare rule respondent for contempt; and respondent further denies that he meant by said words to reflect upon or impugn the integrity of the said Circuit Court and of the said. E. C. Davis as Judge thereof;'' that at the hearing the following order was made:

"This cause coming on to be heard before this court, upon a rule nisi duly served upon the respondent L. Garland Biggers, and he appearing in court in person and with counsel, Frank A. Pettibone Esq. and James B.

Hodges, Esq., and the respondent together with his counsel being in court during a full hearing of this matter and during the entering and reading to the respondent of this judgment and finding of this court; and the court having heard the testimony in the matter, and having read the answer or return filed by the respondent, and being fully advised in the premises:

"THIS COURT FINDS, ORDERS AND ADJUDGES That the allegations set forth in the rule nisi filed in this cause and issued by this court, have been proved and substantiated by the evidence and admitted by the respondent.

"It is further found, ordered and adjudged that this court was not, at the time of the making and publishing of the said speech set forth and alleged in the rule nisi, in vacation, but was in session, and it was during term time, as appears by the records of this court, of which this court takes judicial cognizance.

"The court further finds, orders and adjudges that the case of Edwin Antelo vs. Leonard Bailey, Chief of Police of West Palm Beach, at the time of the making and publishing of the said speech, and at the time of making embarrassing and insinuating and threatening remarks by the respondent, was before the court, and has not been decided and determined, and no final order had been issued and entered therein; that the final order in said cause was not entered until about two o'clock P. M. on the sixth day of February, 1923; and at the time of the offense as alleged in the rule nisi, the court had the said cause under advisement, and the speech and threats and insinuations and words as set forth and alleged in the rule nisi, came to the attention of this court and did embarrass this court in determining the said cause of Antelo v. Bailey, and did interfere with and hinder and embarrass this court in arriving at a decision and final order in said cause.

"The court further finds, orders and adjudges that the said L. Garland Biggers, respondent, is guilty of contempt against this court.

. "R. C. Baker, Sheriff of Palm Beach County, Florida, is ordered to take the said L. Garland Biggers into his control and to confine him in the common jail of Palm Beach County, Florida, from one o'clock A. M. on the 7th day of February, A. D. 1923 until one o'clock P. M. on the 17th day of February, A. D. 1923; and when he has fully exercised and complied with the order of this court, that he shall make his return to this court in this cause, and fail not.

"It is ordered and adjudged that L. Garland Biggers, respondent in this cause, pay the costs of this proceeding.

"Done and ordered at West Palm Beach, Florida, this sixth day of February, A. D. 1923.

(Signed) E. C. Davis, Judge."

A writ of *habeas corpus* was issued from this court as prayed in the petition.

The petitioner here was allowed to give bail bond in $500.00 under Section 3571 of the Revised General Statutes, 1920.

The return of the sheriff showed he held the petitioner upon the proceedings substantially as stated in the petition.

The petitioner filed a "reply or answer" to the sheriff's return and the sheriff moved to strike the "reply or answer."

It appears from a certified copy of the minutes of the court that the Circuit Court for Palm Beach County was in session on November 11, 1922. The statute requires a term of court in the Fifteenth Judicial Circuit to be held in Palm Beach County on the second Tuesday in September, and in St. Lucie County on the second Tuesday in

November, and in Okeechobee County on the second Tuesday in December. The second Tuesday in November, 1922, came on November 14, 1922, and the second Tuesday in December, 1922, was December 12, 1922. A certified copy of the minutes show that the Circuit Court for St. Lucie County was in session in St. Lucie County on November 14, 1922. A certified copy of the minutes of the Circuit Court for Palm Beach County shows this entry: ''This the Fall Term of the Circuit Court of Palm Beach County, Florida, is adjourned sine die this Feb. 8th, 1923. E. C. Davis, Judge.'' When the Circuit Court convened in St. Lucie County on November 14, 1922, pursuant to the statute the Fall Term of the same court in Palm Beach County which was in session on November 11, 1922, was necessarily at an end, even though the Judge on February 8, 1923, signed an order that the Fall Term of the Circuit Court of Palm Beach County was adjourned on that day.

The petitioner moved to be discharged upon the following grounds:

''First, That the Circuit Court was without jurisdiction to enter the order, or judgment, charging this petitioner to be guilty of a contempt of court under the Rule set forth in the return.

''Second, That the acts and words set forth in the Rule against this petitioner do not constitute a contempt of court.

''Third, That the rule nisi, upon which the judgment or order is based, was not founded upon any motion or sworn affidavit.

''Fourth, That the Circuit Court was not in session in a term thereof at the time the alleged contempt was committed or at the time of the issuance of the rule or at the time the judgment order was made and entered.''

The following statutes may be pertinent in this case:

"Every court shall have power to punish contempts against it, but the punishment imposed by a justice of the peace shall not exceed twenty dollars' fine or twenty-four hours imprisonment." Sec. 2534 Rev. Gen. Stats. 1920.

"A refusal to obey any legal order, mandate or decree made or given by any judge either in term time or in vacation relative to any of the business of said court, after due notice thereof, shall be considered a contempt, and punished accordingly. But nothing said or written, or published, in vacation, to or of any judge, or of any decision made by a judge, shall in any case be construed to be a contempt." Sec. 2535 Rev. Gen. Stats. 1920.

"The judges of the several courts are hereby authorized and empowered to exercise in vacation any jurisdiction or power they are now authorized and empowered to exercise in term time; but when the exercise of such power shall require the intervention of a jury it shall not be exercised in cases specially provided, unless all parties agree in writing to waive a jury.

"This Section shall not be construed to require any judge to go out of the county in which he may be during vacation." Sec. 2531 Rev. Gen. Stats. 1920.

"1. Generally.—The return made to the writ may be amended and shall not be taken to be conclusive as to the facts stated therein, but it shall be competent for the court, justice or judge before whom such return is made to examine into the cause of the imprisonment or detention to receive evidence in contradiction of the return, and to determine the same as the very truth of the case shall require.

"2. In Cases of Contempt.—When, on the return of the writ, the cause of detention shall appear to have been a contempt, plainly and specifically charge in the commit-

ment by some court officer or body having authority to commit for the contempt so charged and for the time stated, it shall be the duty of the court or judge before whom the writ is returnable forthwith to remand the prisoner, if the time for detention for contempt has not expired.'' Sec. 3575 Rev. Gen. Stats. 1923.

WHITFIELD, J., (after stating the facts.)

In this *habeas corpus* proceeding it must be determined whether the Circuit Judge had a legal predicate in the finding made as shown by the statement, for adjudicating an imprisonment for contempt of court, the charge being that the respondent below, Petitioner here, made and caused to be published statements intended to impugn the integrity of the Judge and to embarrass the Judge in deciding a case on appeal from the municipal court.

The general common law of England is in force in this State except where it is ''inconsistent with the constitution and laws of the United States and the acts of the legislature of this State.'' Sec. 71, Rev. Gen. Stats. 1920.

There are no statutes regulating the procedure in contempt cases in this State.

As to contempts at common law and the procedure, Blackstone says: ''Contempts are either *direct,* which openly insult or resist the powers of the courts or the persons of the judges who preside there, or else *consequential,* which (without such gross insolence or direct opposition) plainly tend to create a universal disregard of their authority and if the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination. But in matters that arise

at a distance, and of which the court cannot have so perfect a knowledge, unless by the confession of the party or the testimony of others, if the judges upon *affidavit* see sufficient ground to suspect that a contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him, or, in very flagrant instances of contempt, the attachment issues in the first instance; as it also does if no sufficient cause be shown to discharge; and thereupon the court confirms and makes absolute the original rule. This process of attachment is merely intended to bring the party into court; and, when there, he must either stand committed, or put in bail, in order to answer upon oath to such interrogatories as shall be administered to him for the better information of the court with respect to the circumstances of the contempt. These interrogatories are in the nature of a charge or accusation, and must by the course of the court be exhibited within the first four days; and if any of the interrogatories are improper, the defendant may refuse to answer it, and move the court to have it struck out. If the party can clear himself upon oath, he is discharged; but, if perjured, may be prosecuted for the perjury. If he confesses the contempt, the court will proceed to correct him by fine or imprisonment, or both, and sometimes by a corporal or infamous punishment. If the contempt be of such nature that, when the fact is once acknowledged, the court can receive no further information by interrogatories than it is already possessed of, the defendant may be admitted to make such simple acknowledgment, and receive his judgment without answering to any interrogatories; but if he wilfully and obstinately refuses to answer, or answers in an evasive manner, he is then clearly guilty of a high and repeated contempt, to be punished at the discretion of the court. In equity after

the party in contempt has answered the interrogatories, such his answer may be contradicted and disproved by *affidavits* of the adverse party; whereas, in the courts of law, the admission of the party to purge himself by oath is more favorable to his liberty, though perhaps not less dangerous to his conscience; for, if he clears himself by his answers, the complaint is totally dismissed. This method of examining the delinquent himself upon oath, with regard to the contempt alleged, is at least of as high antiquity, and by long and immemorial usage is now become the law of the land.'' 4 Lewis' Blackstone Com. p. 286 *et seq.* and Notes; Appeal of Verdon, 89 N. J. L. 16, 97 Atl. Rep. 783; In re Gonzalez, 88 N. J. L. 536, 97 Atl. Rep. 953.

In contempt proceedings at common law the general rule is that if the matters complained of were not perpetrated in the presence of the court or judge or so near the court or judge as to impede or embarrass judicial procedure, the rule issued to the accused to show cause why he should not be punished for contempt, should be predicated upon affidavits of those who have personal knowledge of the facts alleged as the contempt. If the charge is not so predicated the rule should be discharged or quashed upon appropriate motion. See 13 C. J. 64 *et seq.*

If the charges duly made are admitted to be true and they clearly constitute contempt whether so intended, or not, appropriate punishment follows. If the matters charged and admitted to be true are ambiguous or do not clearly constitute contempt, and an intent to offend is duly denied under oath, a discharge from custody follows. See In re. Chadwick, 109 Mich. 588, 67 N. W. Rep. 1071.

If the matters charged are denied under oath and the denial is false, prosecution for perjury is the remedy.

It does not appear that the Circuit Judge had any personal knowledge of the making of the statements alleged to have been made about him, or of the respondent's part, if any, in the publication of the statements, and there are no affidavits supporting the allegations in the rule that the respondent made the statements and "caused them to be published" in a newspaper in another county and judicial circuit; therefore the 8th ground of the motion to quash the rule was well taken. See *Ex parte* Duncan, 78 Tex. Crim. 447, 182 S. W. Rep. 313, 2 A. L. R. 222 and note; 13 C. J. 64.

In view of the finding of the Circuit Judge that the published statements "came to the attention of this court and did embarrass this court in determining the case" on appeal before him, and as in *habeas corpus* the scope of the inquiry is limited to matters affecting the authority to imprison for contempt, those matters will be considered.

The respondent does not appear to have been an owner or editor or officer of the newspaper in which the publication was made. See Telegram Newspaper Co. v. Commonwealth, 172 Mass. 294, 52 N. E. Rep. 445, 44 L. R. A. 159; *In re* Hayes, 72 Fla. 558, 73 South. Rep. 362.

The statements with reference to the Judge found to have been made and published, were made and published in another city in another county and judicial circuit. There was no jury for the publication to affect. Even though by reasonable inference the speech complained of and its publication, as set out in the statement, were intended to be and were personally offensive to the judge to whom the statements referred, and as such were an unjustifiable personal affront, yet such statements as made and published in another county and circuit even though they "came to the attention of the court," could, in view

of the assumed character and fortitude of a Circuit Judge, reasonably have had no real tendency to embarrass the court in determining the cause referred to, or to interfere with and hinder and embarrass the court in arriving at a decision and final order in said cause. This being so, the express finding of the judge that ''the speech and threats and insinuations and words as set forth and alleged in the rule nisi, came to the attention of this Court and did embarrass this Court in determining the said cause of Antelo v. Bailey, and did interfere with and hinder and embarrass this Court in arriving at a decision and final order in said cause,'' is not warranted by the acts charged and found to have been committed as charged. As a necessary result, the finding is in law not a sufficient predicate for the order adjudging imprisonment of the respondent, petitioner here, as for contempt of court. The determining point is not alone what effect the acts complained of actually had on the Judge but what were the reasonable tendencies of the acts with reference to the integrity of the court and to the performance of judicial functions.

The right to make fair comments and criticisms of official conduct, does not warrant or excuse offensive statements reflecting upon officials as such; but unless acts or words of criticism or condemnation affecting a judicial officer not perpetrated in or near his presence when acting judicially, are of such a nature and occur under such circumstances as to offend the court as such or to hinder or embarrass the orderly discharge of judicial functions, such acts, words or other conduct do not in general warrant imprisonment as for contempt of court. See *Ex parte Earman*, decided this day.

A Circuit Judge is expected to be a man of ordinary firmness of character; and if the matter complained of as constituting contempt, when fairly interpreted, does not

have a reasonable tendency to degrade or to embarrass or hinder such a judge in performing his own duty, or to affect a mind of reasonable fortitude it is not a criminal contempt for which imprisonment may be lawfully adjudicated, particularly when an intent to offend is denied on oath.

Generally it is the nature and reasonable tendencies of the matter complained of that controls; and if the matter is of doubtful tendency or might or might not be considered ambiguous as to its general or specific purpose, the circumstances under which the thing was done or in which its consequences are to appear, may be considered in determining the reasonable tendency of the matter to affect judicial authority or dignity; and express denials of a desire or an intent to offend, when duly supported or corroborated by pertinent circumstances may be considered in determining the real nature and reasonable tendency of the matter complainned of as being calculated to affect the functions of the court. See 6 R. C. L. 584; *In re.* Chadwick, 109 Mich. 588, 67 N. W. Rep. 1071.

The statement that the Judge "is as weak as water" was made in another circuit and not in or near the presence of the Judge when acting judicially so as to be a direct insult to the court as a tribunal, and the statement under the circumstances, had a personal rather than a judicial reference, particularly when considered in connection with another statement in the same speech that the Judge was a candidate for another office. The statement that "our court is absolutely annulled if a man has money and influence," had reference to the municipal court in which the convictions referred to were had; and the part of the statement as to "money and influence" may reasonably have had reference to the expense and help necessary in employing counsel and paying costs and in

giving bond in obtaining a review of convictions adjudi-
cated in the municipal court. The statement that he spoke
"without fear of being in contempt," like the other state-
ments, is ambiguous and did not necessarily reflect upon
the court and could not impede judicial functions. The
respondent denied under oath that he intended to reflect
upon or impugn the integrity of the judge and denied that
he caused the statement to be published. These denials
should be given due weight in determining whether a con-
tempt of court was committed. All the statements were
made in one speech in another circuit, and even if the re-
spondent caused them to be published in a newspaper that
circulated within the jurisdiction of the Circuit Judge, the
statements when taken together and considered in the light
of the attending circumstances, were not a direct insult to
or in the presence of the court as a judicial tribunal, and
they had no real tendency to hinder or impede or in any
way to affect the judicial functions of the Circuit Judge,
who proceeded in due course to dispose of the pending case
as his judicial authority and duty appeared to him. See
13 C. J. 36.

In *Ex parte* Hayes, 72 Fla. 558, 73 South. Rep. 362, the
respondents were writers for or connected with the news-
paper that published, within the jurisdiction of the court
while it was in daily session, plain and ambiguous charges
against the integrity of the court, and the newspapers
were circulated in the presence of the court. Upon the
filing of an admission of the publication with a disclaimer
of any intent to reflect upon the court, the respondents
were adjudged guilty of contempt because of the plainly
impugning nature of the admitted publication, and the
respondents were discharged upon payment of costs.

In this case the person who made the statement about the
Circuit Judge was apparently not connected with or a

writer for the neinwspaper in which the publication was made, the newspaper was published in another judicial circuit, there was no affidavit to support the charge that the respondent ''caused'' the publication to be made and the respondent specifically denied under oath that he ''caused'' the publication to be made in the newspaper which was circulated in the circuit where the judge resided.

The petitioner will be discharged.

TAYLOR, C. J., AND BROWNE AND WEST, J. J., concur.

ELLIS, J., dissents.

ELLIS, J., dissenting.

The record shows that the Circuit Court of the Fifteenth Judicial Circuit had jurisdiction of the accused.

''As a general rule *habeas corpus* does not lie to correct mere irregularities of procedure where there is jurisdiction, and in order to sustain the writ there must be illegality or want of jurisdiction.    Ex parte Pitts, 35 Fla. 149, 17 South. Rep. 96; Ex parte Prince, 27 Fla. 196, 9 South. Rep. 659; Ex parte Bowen, 25 Fla. 214, 6 South. Rep. 65,'' cited in Ex parte Senior, 37 Fla. 1, 19 South. Rep. 652.

The rule adopted in the Senior case, *supra,* is the rule which obtains in this State and the one supported by the courts generally throughout the United States.    It is: ''that the conduct charged as constituting the contempt must be such that *some degree* of delinquency or misbehavior can be predicated of it; for if the act be *plainly indifferent* or *meritorious,* or if it be only the assertion of

the undoubted right of the party it will not become a criminal contempt by being adjudged to be so. The question whether the alleged offender really committed the act charged, will be conclusively determined by the order or judgment of the court; and so with equivocal acts, which may be culpable or innocent according to the circumstances; but where the act is necessarily innocent or justifiable, it would be preposterous to hold it a cause of imprisonment.''

The judgment of the Circuit Court is, according to the rule announced in the Senior case, *supra,* conclusive upon Mr. Biggers that he committed the acts charged. Whether he actually printed the article in the newspaper is immaterial. He gave publicity to his thoughts and words by publicly expressing them in a speech before the assembled members and visitors at a meeting of the Florida League of Municipalities. Be that however as it may, according to the decision and opinion of this court in the Senior case, the charge that he caused the spoken words to be published in the newspaper is conclusively determined by the order or judgment of the court.

The ''overwhelming weight of authority'' is that ''where a court has jurisdiction of the person of the defendant, and of the subject-matter out of which the alleged contempt arises, he is not entitled to relief by means of this writ.'' 6 R. C. L. 540.

The Senior case, *supra,* modifies the rule to the extent stated. Any further modification of the rule seems not to be justified by precedent or principle. The views expressed by the court in *Ex parte Hayes,* 72 Fla. 558, 73 South. Rep. 362, are in conformity with the views entertained by the courts generally upon the subject of contempt.

The words of Mr. Biggers cannot be said to be "plainly indifferent or meritorious" nor "only the assertion of the undoubted right of the party," nor can they be said to be either innocent or justifiable. I think his words amounted to a charge against the judge of inefficiency and venality. Whether his words actually influenced the court or not is not the test of liability as it is impossible to say just what effect such an attempt has had. 6 R. C. L. 514.

I am not concerned nor should an appellate court be concerned with the expediency or propriety of a circuit judge's action in noticing any such verbal attacks upon him.