SHANNON CORMACK v. D. C. COLEMAN, as Sheriff, Dade County.

PAUL G. JEANS v. D. C. COLEMAN, as Sheriff, Dade County.

161 So. 844.
Division A.
Opinion Filed May 28, 1935.
Rehearing Denied June 19, 1935.

*James M. Carson* and *M. Victor Miller,* for Petitioner; *Cary D. Landis,* Attorney General and *H. E. Carter,* Assistant, for Respondent.

WHITFIELD, C. J.—In these habeas corpus proceedings it appears that there were filed in the Criminal Court of

Record for Dade County, Florida, two petitions, each being in substance as follows:

"IN THE CRIMINAL COURT OF RECORD, IN AND FOR DADE COUNTY, FLORIDA.

"IN THE MATTER OF ............ THOMPSON, Paul G. Jeans and SHANNON CORMACK.

"PETITION FOR CITATION FOR CONTEMPT.

"Comes now FRED W. PINE, County Solicitor of the Criminal Court of Record in and for Dade County, Florida, and respectfully shows unto the Court that, on the 19th day of February, 1935, there was then and there pending in the above entitled Court, before the Honorable Jefferson B. Browne, acting Judge thereof, by executive appointment of the Governor of the State of Florida, a certain cause between the State of Florida as plaintiff and one Hayes H. Lewis as defendant.

"That on said date the said Paul G. Jeans was editor of a certain daily newspaper then and there known as the "Daily Tribune," also known as "Miami Beach Daily Tribune," published in and at Miami Beach, Dade County, Florida, and generally circulated upon and through the streets of Miami, Dade County, Florida, where the above entitled Court is seated.

"That the said ............ Thompson was then City Editor of said daily newspaper.

"That said Shannon Cormack was then and there reporter of said daily newspaper.

"That in an edition of said daily newspaper, published and circulated on Tuesday, February 19, 1935, (although the date thereof on the first page of said newspaper was erroneously stated as March 5, 1935, the said Shannon Cormack prepared an article with reference to the above pending suit, and the said ............ Thompson and the said

Paul C. Jeans edited and approved the same and said article was published and printed therein; that said article contained false libelous and defamatory statements, either directly or by natural inference and innuendo; that contained in said article were the following words and figures, to-wit:

"'Judge Jefferson B. Browne, former Chief Justice of the Supreme Court, was ordered to the Lewis trial by Gov. Dave Sholtz and at first he saw nothing wrong with Pine's prosecuting his friends.

"'It was Judge Browne who presided at the trial of Pine himself a few years ago when the County Solicitor was 'vindicated' on charge of improperly performing the duties of his office in connection with the slot machine scandal that brought about the suicide of former Sheriff Lehman.'

"That the 'Judge Jefferson B. Browne' referred to in said article was then and there the acting Judge of this Court and that the 'Lewis trial' referred to therein was the pending proceedings hereinabove referred to.

"That the above quoted portions of said article were false and without any basis in truth or in fact and were written, edited and printed by the said ............ Thompson, Paul G. Jeans and Shannon Cormack with reckless disregard for the truth thereof; that the falsity thereof was easily ascertainable by the most casual inquiry or by a casual inspection of the records of this Court and that the action of the said ............ Thompson, Paul G. Jones and Shannon Cormack was flagrantly contemptuous of this Court and the acting Judge thereof and tended to hold the said Court and the acting Judge thereof up to public ridicule and tended to obstruct justice and the orderly conduct of said Court and to hinder and embarrass said Court in its legal and lawful operation.

"WHEREFORE, Your petitioner respectfully prays the Court that a rule to show cause be issued by this Court, directed to the said ........... Thompson, Paul G. Jeans and Shannon Cormack, and each of them, to show cause, if they or either of them can, at a time and place to be fixed by this Court, why they, and each of them should not be adjudged in contempt of this Court for the reasons herein set forth.

"FRED PINE, *County Solicitor.*"

Citations were issued. The respondents filed the following answer:

"IN THE CRIMINAL COURT OF RECORD, IN AND FOR DADE COUNTY, FLORIDA.

"IN THE MATTER OF: PAUL JEANS, ELWYNN THOMPSON AND SHANNON CORMACK.

"ANSWER TO CITATION FOR CONTEMPT.

"Now comes Paul Jeans, Elwynn Thompson, and Shannon Cormack, respondents herein, and under oath for answer to the citation for contempt hearing say in this their joint and several answer:

"1.

"The respondents admit that the statements contained in the petition for citation for contempt filed herein concerning the Honorable Jefferson B. Browne were written and published in the Miami Beach Daily Tribune, and the respondents each admit that the said statement as published was false, but the respondents deny that the said statement was defamatory or that it was intended to or would have the effect of holding the court and the acting judge thereof up to public ridicule and the respondents deny that the effect of said publication was to obstruct justice and the

lawful and orderly operation of said Court or to hinder and embarrass said Court and the acting Judge thereof in the lawful and proper case then.pending before it wherein the State of Florida, was plaintiff and Hayes Lewis was defendant.

"II.

"The respondents each deny that any of the said respondents had any intention to reflect upon the Court or the acting Judge thereof in any manner whatever, but respondents allege that through a mistake of the respondent, Shannon Cormack, the words set up in the petition for citation of contempt were used in an endeavor to identify the said acting Judge of the court as having presided in a previous trial of this court and allege that the facts are that another Judge whose name is pronounced the same as the acting Judge of this Court, but spelled differently, had actually presided at the trial described in and by said article. The Respondents allege that the said mistake was an honest mistake, innocently made and was without any intention of reflecting upon the acting Judge of this Court in any manner whatever.

"III."

"That upon being advised of the mistaken statement of fact contained in this newspaper article the respondents in the next issue of said Daily Tribune caused to be printed upon the front page of said paper and to be displayed more prominently than the original mistaken article, a correction thereof which correction reads as follows:

" 'CORRECTION

" 'THE TRIBUNE inadvertently made a misstatement yesterday to the effect that Judge Jefferson B. Browne, who presided in the trial of Hayes Lewis had also presided over

the trial of Fred Pine in connection with the slot machine scandals which resulted in the suicide of the late Sheriff Lehman. It was Judge W. F. Brown who presided at one of the Pine trials and Judge Vining Harris who presided over the trial which resulted in the acquittal of Pine.

"'THE TRIBUNE regrets extremely the error made in which Judge Browne was represented as having tried the Pine case. This newspaper had no reason or intention to cast any reflection upon the reputation of this eminent jurist, whose integrity has never been challenged.

"'Consequently, the TRIBUNE takes this occasion to apologize to Judge Browne for an honest error due to failure of this newspaper's reporter who wrote the story to check the records more carefully.'

"That in order that the Court may see for itself the prominence of the display of the article correcting said mistaken statement of fact the front page of the said Daily Tribune, dated Wednesday, February 20th, 1935, is attached to this answer.

"IV.

"The respondents each deny any intent upon the part of any of them to reflect in any manner upon the acting Judge of the Criminal Court of Record in and for Dade County, Florida, but on the contrary allege that they have for said Judge for his ability, fairness and integrity, the highest regard.

"Having fully answered said citation for contempt and having fully denied under oath, any intent either directly or by natural inference or innuendo to offend the said Court or the acting Judge thereof, the respondents pray

that they may be discharged and that the citation against them for contempt may be dismissed.

"MILLER & HARRIS,

"By M. VICTOR MILLER.

"Sworn to and subscribed before me this 20th day of February, A. D. 1935,

"A. D. KILLIAN

"Deputy Clerk Criminal Court of Record, Dade County, Florida.

"Attorneys for Respondents.

"PAUL G. JEANS,

"ELWYNN THOMPSON,

"SHANNON CORMACK,

Respondents."

The Executive order referred to as *Exhibit E* is as follows:

"STATE OF FLORIDA

"EXECUTIVE DEPARTMENT

"TALLAHASSEE

"*Whereas*, it has been officially made known to me that justice demands the transfer of a Judge to the Criminal Court of Record of Dade County, Florida;

"Now, THEREFORE, I, David Sholtz, acting under and by virtue of the authority vested in me as Governor of the State of Florida, do hereby designate, assign and appoint Honorable Jefferson B. Browne, Judge of the Twentieth Judicial Circuit of the State of Florida, to proceed to Miami, in the County of Dade, State of Florida, and thereupon on Monday, the 18th day of February, A. D. 1935, and as long as may be necessary thereafter, on account of the disqualification of the resident Judge, to be and appear in the Criminal Court of Record in and for Dade County, Florida, and to then and there proceed to hear, conduct, try and determine the case of State of Florida versus H. H. Lewis; and he, the said Jefferson B. Browne, under and by virtue of the authority hereof, is hereby vested with all

and singular the powers and prerogatives conferred by the Constitution and laws of the State of Florida upon Judges presiding by virtue of an order of the Governor of said State.

"In Testimony Whereof I have hereunto set my hand and caused the Great Seal of "(Great Seal of State the State of Florida to be of Florida) affixed at Tallahassee, the "By the Governor, Capital, this 16th day of Attest: February, A. D. 1935.

"R. A. Gray, "David Sholtz, Secretary of State." "Governor."

The judgment of the presiding Judge contains the following:

"The court finds that Shannon Cormack, who wrote the article, and Paul G. Jeans, who read the article before it was published, and permitted it to be published, knowing its improper character, are both guilty of contempt of court, and that for such contempt

"It Is Ordered and Adjudged that Shannon Cormack shall pay into the registry of this court a fine of Fifty Dollars ($50.00), and for non-payment of the fine within 24 hours shall be committed to the County Jail for a term of five days, unless the fine be sooner paid, and in addition thereto be committed to the County Jail of this county for a period of twenty-four hours, and

It Is Further Ordered and Adjudged that Paul G. Jeans pay into the registry of this court a fine of Fifty Dollars ($50.00) and for non-payment of the fine *instanter,* shall be committed to the County Jail for a term of 5 days unless the fine be sooner paid.

"It appearing that Elwynn Thompson, editor, who, in open court, under oath, disclaimed any knowledge of the article until after the publication of the newspaper,

"IT IS FURTHER ORDERED AND ADJUDGED that he be and is hereby exonerated.

"DONE AND ORDERED at Miami, Dade County, Florida, in open Court, this 20th day of February, 1935.

"JEFF'N B. BROWNE, <em>Judge.</em>"

A petition was filed in this Court by Shannon Cormack alleging:

"I.

"That he is committed, restrained and imprisoned by virtue of a certain order of the Honorable Jefferson B. Browne, purporting to be acting judge of the Criminal Court of Record, in and for Dade County, Florida * * *; that the said order was based upon a certain petition for citation for contempt filed in the Criminal Court of Record in and for Dade County, Florida * * *; that in pursuance of said petition a certain citation for contempt was issued by the said Honorable Jefferson B. Browne, purporting to act as judge of the Criminal Court of Record in and for Dade County, Florida, * * *.

II.

"That before the entry of said order, your petitioner had filed in reply to said citation for contempt his answer under oath denying any intention to reflect upon said Court or the acting judge thereof, * * *.

III.

"That the said Honorable Jefferson B. Browne, is judge of the Circuit Court of the Twentieth Judicial Circuit of Florida, which said circuit includes the County of Monroe

only, and that the said Honorable Jefferson B. Browne in acting as judge of the Criminal Court of Record in and for Dade County, Florida, was acting in pursuance of a certain executive order signed by the Honorable David Sholtz, Governor of the State of Florida, and dated February 16, 1935, * * *; that the aforesaid executive order was based upon Chapter 15613 of the Laws of Florida, Acts of 1931, Extra Session, which said Act is unconstitutional and void for the reasons that are hereinafter in this petition set forth, and that the executive order based thereon is void, and that the said Honorable Jefferson B. Browne while purporting to act as acting judge of the Criminal Court of Record in and for Dade County, Florida, was without jurisdiction or authority so to act.

## IV.

"That the aforesaid pretense of restraint is insufficient in this:

"1. That the Honorable Jefferson B. Browne was without jurisdiction or power as acting judge of the Criminal Court of Record for Dade County, Florida.

"2. That the executive order of the Governor of Florida assigning and appointing the Honorable Jefferson B. Browne as acting judge of the Criminal Court of Record of Dade County, Florida, was without authority of law and void.

"3. That Chapter 15613 of the laws of Florida, acts of 1931, Extra Session, is unconstitutional and void in that the jurisdiction of the Circuit Courts and of Criminal Courts of Record where they are established by law are set up and defined in the Constitution of Florida and cannot be changed by Legislative enactment.

"4. The attempt by any Circuit Court of any Circuit

Judge to exercise jurisdiction in a county where a Criminal Court of Record is by law established of any criminal case cognizable by said Criminal Court of Record is in violation of Section 11, of Article 5 of the Constitution of Florida.

"5.   The attempt by the Legislature in Chaptér 15613 to provide for the assigning of a judge of the Circuit Court to preside in inferior courts is in violation of Article 5 of the Constitution, and is, therefore, void.

"6.   The citation and the petition upon which it is based do not in themselves show any publication which would reflect in any wise upon said court or the acting judge thereof.

"7.   That the words that the language complained of is ambiguous, and the answer under oath of the petitioner disclaims any intention to offend.

"8.   The records in said cause show that no contempt of court was committed.

"Your Petitioner, therefore, prays that a writ of habeas corpus issue to be directed to the said D. C. Coleman, as Sheriff of the said county of Dade and State of Florida, and returnable forthwith before this Court in order that the Court may inquire into the cause of the aforesaid restraint of this Petitioner, and upon such inquiry discharge your Petitioner from custody."

The documents referred to in the petition appear in the foregoing pages herein.  A similar petition was filed by Paul G. Jeans.  Writs of habeas corpus were issued by this court.

The return of the Sheriff states:  "That he holds the said SHANNON CORMACK and has him in his custody under and by virtue of a commitment issued by the Honorable George F. McCall, Clerk of the Criminal Court of Record of Dade County, Florida, on the 20th day of February,

A. D. 1935, in which said commitment the said SHANNON CORMACK has been adjudged guilty on a Citation for Contempt, and sentenced 'to pay a fine of $50.00, and for the non-payment of the fine within 24 hours, shall be committed to the County Jail for a term of five days, unless the fine shall be sooner paid, and in addition thereto be committed to the County Jail of this County for a period of 24 hours.'"

A similar return was made as to Paul G. Jeans. Petitioners move to be discharged.

In Article V of the Constitution it is provided that the Legislature may establish in any county upon application of a majority of the registered voters therein, "a Criminal Court of Record, and there shall be one Judge for each of said Courts, who shall be appointed by the Governor and confirmed by the Senate." (Section 24). "That said courts shall have jurisdiction of all criminal cases not capital, which shall arise in said counties respectively." (Section 25.) "The Circuit Courts shall have exclusive original jurisdiction * * * of all criminal cases not cognizable by inferior courts * * * and of such other matters as the Legislature may provide." (Section 11.)

Chapter 15613, Acts of 1931, is as follows:

"AN ACT to Provide for the Substitution of Judges of and for Criminal Courts of Record, Civil Courts of Record and Courts of Crime in Certain Cases, and in Certain Counties.

"Be It Enacted by the Legislature of the State of Florida:

"Section 1. Whenever it shall appear to the Governor of this State that any Judge of a Criminal Court of Record, or of a Civil Court of Record or of a Court of Crimes, where such Court or Courts are established and exist in a Circuit composed of one county only and in which there are three or more Circuit Judges, is absent from his juris-

diction and can not hold the Court or Courts of the same, or is disqualified in any cause pending in such Court, or for any cause cannot properly hear, try and determine the same, the Governor may appoint and assign any Judge of any Circuit Court in this State to hold any regular or special term of such Criminal Court of Record, Civil Court of Record or Court of Crimes, or to try any case or cases pending in the jurisdiction thereof and at such time, or times, as the Governor may direct.

"Section 2. This Act shall take effect upon its becoming a law.

"Approved June 25, 1931."

It has been held that under the organic provision that the Circuit Courts shall have jurisdiction "of such other matters as the Legislature may provide," a statute is constitutional when providing that:

"Any Judge of the Circuit Court of the county, in the case of the disqualification, absence, sickness or other disability of the County Judge, is authorized to discharge all of the duties and powers of the County Judge as a Probate Judge. In the event such Circuit Judge be disqualified, absent from the Circuit sick, or under other disability, then any other Circuit Judge in the State who is not disqualified may discharge such duties and powers." Sec. 42, par. 1, Chap. 16103, Acts 1933, Sec. 5541 (5), Cum. Supp. C. G. L. Fla. 1934, Sec. 5199 (3346) par. 1, C. G. L., Sec. 1590 Rev. Gen. Stats., 1892, State, *ex rel.* v. Horne, Judge, 86 Fla. 309, 98 So. 330.

Whatever a statute may under the Constitution authorize a circuit court to do it may authorize a circuit judge to do unless forbidden to do so by some express or implied provision of organic law. As under the Constitution the Legislature may give to circuit courts jurisdiction of "other

matters" in addition to the jurisdiction conferred by the Constitution when jurisdiction of such "other matters" is not forbidden to the circuit courts by some other provision of organic law, so such added jurisdiction may under the quoted general clause of the Constitution be conferred upon circuit judges by statute when other organic provisions are not violated. See also State, *ex rel.* Young, v. Duval County 76 Fla. 180, text 108 79 So. 692; Pugh v. Bowden, 54 Fla. 302, 45 So. 499.

When under the statute and an executive assignment a Circuit Judge is acting as Judge of a Criminal Court of Record, he performs judicial functions expressly conferred upon the latter court by the Constitution; but this is permissible when authorized by statute under the organic provision that the Circuit Courts shall have jurisdiction of stated matters and "of such other matters as the Legislature may provide" there being no provision of organic law forbidding such statutory jurisdiction to be conferred upon Circuit Judges when a Judge of a Criminal Court of Record is disqualified or otherwise unable to perform his judicial duties as stated in Chapter 15613, Acts of 1931, above quoted.

The provisions of the Constitution as to temporary exchanges of circuits by Circuit Judges upon the order of the Governor in his discretion (Sec. 8), and fixing the jurisdiction of a Judge of the Criminal Court of Record (Sec. 25), or other organic provisions, do not forbid a statute authorizing the Governor to assign a Circuit Judge to any regular or special term of a Criminal Court of Record, or to try any case or cases pending therein under the terms stated in Chapter 15613, Acts of 1931.

The statutes do not purport to authorize the Governor

to assign a judge of an inferior court to preside over a Circuit Court.

It is not necessary to consider whether a statute may confer upon a Circuit Court any or all of the jurisdiction conferred by the Constitution upon Criminal Courts of Record. See State v. Betts, 25 Fla. 258, 5 So. 297.

Even if the Circuit Judge was not properly assigned to preside over the Criminal Court of Record, the Circuit Judge was at the time a judicial officer of the State and as such had authority to punish for a contempt of court in a matter being judicially considered by him.

The publication admittedly made by the petitioners when the case of State v. Lewis was under consideration in the Criminal Court of Record is as follows:

"Judge Jefferson B. Browne, former Chief Justice of the Supreme Court, was ordered to the Lewis trial by Gov. Dave Sholtz and at first he saw nothing wrong with Pine's prosecuting his friends.

"It was Judge Browne who presided at the trial of Pine himself a few years ago when the County Solicitor was 'vindicated' on charges of improperly performing the duties of his office in connection with the slot machine scandal that brought about the suicide of former Sheriff Lehman."

Such admitted published words are not ambiguous and are necessarily contemptuous of the court and its processes. The apology offered for the mistake of fact contained in the publication and the disclaimer of intent to reflect upon "the acting Judge" do not deprive the publication of its contemptuous nature, and the Judge had authority to impose appropriate penalties for the contemptuous publication. See *Ex parte* Biggers, 85 Fla. 322, 95 So. 763.

The petitioners, Shannon Cormack and Paul G. Jeans, will be remanded.

Brown and Davis, J. J., concur.

Ellis, P. J., and Terrell, J., concur in the opinion and judgment.

Buford, J., dissents in part.

Buford, J. (dissenting in part).—I am unable to fully concur in the majority opinion in this case.

I concur in the conclusion reached that the statute authorizing the assignment of a Circuit Judge to act as Judge of a Criminal Court of Record is valid and that in the instant case Judge Jefferson B. Browne, a Circuit Judge, was vested with power and jurisdiction to act as Judge of the Criminal Court of Record in and for Dade County, Florida, at the time of the occurrence of the acts complained of.

I am unable to agree, however, that the acts set forth in the petition for citation for contempt which are alleged to have been acts of contempt of court are sufficient to constitute contempt.

The petition alleges the publication in a newspaper of two paragraphs, the first of which is as follows:

"Judge Jefferson B. Browne, former Chief Justice of the Supreme Court, was ordered to the Lewis trial by Governor Dave Sholtz and at first he saw nothing wrong with Pine's prosecuting his friends."

It is impossible for me to see in this paragraph any language which is susceptible as being construed as contemptuous. Certainly there could be nothing wrong *per se* about the act of a prosecuting attorney doing his duty as a prosecuting officer, though one of his friends happens to be the defendant under prosecution. If the prosecution office does his duty in a fearless and impartial manner, certainly there is nothing wrong in such conduct, regardless who the defendant may be. It might develop that a prosecuting attorney when called upon to prosecute his friend was not in-

clined to do his full duty and then it might be that a Judge would see something wrong about that prosecution and use his power to correct that wrong. There is no reflection in that paragraph on either the Judge as such or the court.

The other paragraph is as follows:

"It was Judge Browne who presided at the trial of Pine himself a few years ago when the county solicitor was 'vindicated' on charges of improperly performing the duties of his office in connection with a slot machine scandal that brought about the suicide of former Sheriff Lehman."

I find nothing in this paragraph which could be construed as contempt of court. Perhaps the statement contained in this paragraph was not true. Perhaps, as is shown by the answer, that it was another Judge Browne who officiated at the Pine trial referred to, but there is nothing in this paragraph which expresses the thought or insinuates that there was any improper conduct on the part of the trial judge who officiated at that trial and one must draw heavily upon one's imagination to reach the conclusion that the language used carried an insinuation of improper conduct on the part of the trial judge. Certainly to say that a particular judge presided at a trial wherein someone accused of some crime was vindicated is no reflection upon the trial judge. The most honorable, fair and fearless judges of our country have presided with dignity and unquestioned integrity and ability in trials wherein persons charged with the most heinous offenses have been vindicated of the charges upon which they were being tried and this will continue to happen. Sometimes the guilty will be vindicated. Sometimes the innocent may not be vindicated but may be convicted and either may occur without any improper conduct on the part of the trial judge.

I feel very strongly that the respect due to courts of the

land must be upheld; that contemptuous conduct should be punished and that there is a limit to the freedom which may be exercised by the press in unwarranted criticisms of judges and of the courts, but I think that if the respect which should be accorded to the courts is upheld that the courts must not fall in the error of arbitrarily adjudging acts to have been perpetrated in contempt of court when there is no basis in fact for such adjudication.

The majority opinion, referring to the two paragraphs above quoted, says: "Such admitted published words are not ambiguous." It then says that such words "are necessarily contemptuous of the court in its process."

I agree that the published words are not ambiguous. They contain no veiled insinuation. They merely state two propositions as facts. I think it is immaterial whether the statements are true or untrue. There is nothing in either of them which reflects upon the abiilty or the dignity or the integrity either of the trial judge as a man, or as a judge, nor do they reflect upon the court as an institution.

In the case of *Ex Parte* Biggers, 85 Fla. 322, 95 Sou. 763, we said:

"If the charges duly made are admitted to be true and they clearly constitute contempt whether so intended, or not, appropriate punishment follows. If the matters charged and admitted to be true are ambiguous or do not clearly constitute contempt, and an intent to offend is duly denied under oath, a discharge from custody follows. See *In re* Chadwick, 109 Mich. 588, 67 N. W. Rep. 1071."

On authority of this holding, I think, the petitioners should be discharged.