592 So.2d 753 (1992)
Paul SCRIMSHAW, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-1576.
District Court of Appeal of Florida, Third District.
January 14, 1992.
Weinstein & Preira and Richard J. Preira, for appellant.
Robert A. Butterworth, Atty. Gen., and Angelica D. Zayas, Asst. Atty. Gen., for appellee.
Before BASKIN, FERGUSON and LEVY, JJ.
*754 LEVY, Judge.
We reverse the trial court's finding that appellant Paul Scrimshaw wilfully disobeyed a subpoena ordering him to appear in court as a witness for the defense. The record reveals that Detective Scrimshaw was subpoenaed to appear "on Monday, the 16th of April, 1991, until proceedings are concluded or excused by the Court," to testify regarding a case of attempted murder in the first degree, sexual battery and robbery.
Detective Scrimshaw admitted that he received the subpoena and, furthermore, that he had received phone calls from the assistant state attorney and defense counsel informing him that he would be called to testify during the following week, Monday, April 23, 1991. He responded to the assistant state attorney's call by telling her that he was going to be out of town on vacation during the week of April 23rd and, furthermore, that it was his understanding that the subpoena was only valid for the week of April 16th. The assistant state attorney then stated, "Oh, okay."
Prior to this time, Detective Scrimshaw had spent 17 days, working 12 to 15 hours a day, digging bodies out of the Fontana Hotel fire scene in Miami Beach. Due to this disaster, the detective's vacation plans had been cancelled twice, and rescheduled for the week of April 23, 1991. At the contempt hearing, a Miami Beach police captain testified that Detective Scrimshaw had never failed to respond to a subpoena in his ten years of unblemished service on the force. Testimony was also introduced by the defense attorney that the detective had been prompt and cooperative in responding to prior subpoenas in the case. Detective Scrimshaw expressed remorse at the hearing, and apologized for any inconvenience his absence had caused. At the conclusion of the hearing, the trial judge entered an order adjudicating Detective Scrimshaw to be in indirect criminal contempt, and sentencing him to pay a $250.00 fine and perform fifty hours of community service.
The failure to appear pursuant to a court order constitutes criminal contempt. Porter v. Williams, 392 So.2d 59 (Fla. 5th DCA 1981); Sandstrom v. State, 390 So.2d 448 (Fla. 4th DCA 1980), review denied, 397 So.2d 779 (1981). However, as stated by the Florida Supreme Court in Ex parte Biggers, 85 Fla. 322, 95 So. 763 (1923):
"[I]f the matter complained of as constituting contempt, when fairly interpreted, does not have a reasonable tendency to degrade or to embarrass or hinder ... it is not a criminal contempt ... when an intent to offend is denied under oath."
Thus, the focus of the inquiry in determining whether a witness should be punished for contempt, is whether the witness's conduct reflects an "intent" to interfere with judicial function. See Florida Ventilated Awning Company v. Dickson, 67 So.2d 218 (Fla. 1953); Department of Health and Rehabilitative Services v. State, 338 So.2d 220 (Fla. 4th DCA 1976). There must be proof that the defendant intentionally disobeyed the court. Hunnefeld v. Futch, 557 So.2d 916 (Fla. 4th DCA 1990).
In the present case, the record is devoid of any evidence indicating that Detective Scrimshaw's conduct was intended or reasonably calculated to degrade, embarrass, or hinder the judicial function. To the contrary, the record reveals that Detective Scrimshaw reasonably believed the assistant state attorney had authorized him to proceed with his previously scheduled vacation, and thus his failure to appear in court cannot fairly be construed as a wilful neglect of his duty to respond to the trial subpoena. Accordingly, we reverse the conviction for contempt and reverse the sentence imposed thereon.
Reversed.