THE STATE OF FLORIDA, *Plaintiff in Error,* v. CLARENCE SULLIVAN, *Defendant in Error.*

En Banc.

Opinion Filed February 14, 1928.

192

194

*Fred H. Davis,* Attorney General; *Charles B. Parkhill,* State Attorney, and *W. F. Himes,* for Plaintiff in Error.

*Fred H. Davis,* Attorney General, *Charles B. Parkhill,* State Attorney, and *W. F. Himes,* of Tampa, for Plaintiff in Error;

*D. C. McMullen,* of Tampa, for Defendant in Error.

*Bart A. Riley* and *Roy S. Wood,* of Miami, as *amici curiae.*

TERRELL, J.—The Legislature at its regular session in 1927 enacted Chapter 11975, Laws of Florida, creating a Court of Crimes in certain counties of this State. Clarence Sullivan, the defendant in error, was convicted for petit larceny in the Court of Crimes of Hillsborough County, so created, and sentenced to serve sixty days in the county jail, to pay a fine of One Hundred Dollars and costs, and in default of payment of said fine to serve an additional sixty days in jail.

Subsequent to the judgment so entered, Clarence Sullivan applied for and procured a writ of *habeas corpus* from a member of this Court which was made returnable to the Judge of the Circuit Court of Hillsborough County. To the said writ the sheriff of said county filed his return, stating that he held the petitioner by virtue of the conviction and commitment as above stated. The petitioner then filed his motion for discharge, predicated on the sole ground that the act creating the Court of Crimes for Hillsborough County is unconstitutional and void. The Circuit Judge entered his final judgment July 7, 1927, holding said Chapter 11975, Laws of Florida, creating said Court of Crimes, unconstitutional, null and void, and discharging the petitioner, Clarence Sullivan, from custody. From that final judgment writ of error was prosecuted to this Court.

The constitutional validity of Chapter 11975, Laws of Florida, is assailed on the grounds, (1) that it trenches on the jurisdiction of the Criminal Court of Record, (2) the classification of counties in which Courts of Crimes are created is irrational, unreasonable and arbitrary, (3) provides indirectly for an additional judge for the Criminal

Court of Record, and (4) even if it could be done under
the Constitution, the Act does not give concurrent jurisdic-
tion of misdemeanors to the Court of Crimes with that of
the Criminal Court of Record.

The answer to these questions involves an interpretation
of certain of those provisions of Article V of our Constitu-
tion, relating to Criminal Courts of Record and their juris-
diction.  Article V of the Constitution is better known as
the judiciary article.  It provides a complete scheme for
the creation, organization, jurisdiction and administration
of the Judicial Department of the State Government.  Sec-
tion 1 enumerates what courts the judicial power of the
State shall be vested in.  Sections 2 to 7, inclusive, and
Sections 43 and 44 relate to the organization and jurisdic-
tion of the circuit courts.  Sections 16 and 17 relate to the
organization and jurisdiction of county judges' courts.
Sections 18 and 19 relate to the organization and jurisdic-
tion of county courts, and Section 20 relates to referees for
the trial of civil causes.  Sections 21 to 23, inclusive, relate
to the organization and jurisdiction of justice of the peace
courts.  Sections 24 to 32, inclusive, relate to the organiza-
tion and jurisdiction of criminal courts of record, and Sec-
tions 39 to 41, inclusive, relate to the organization and
jurisdiction of the Court of Record for Escambia County.
Provision for criminal courts of record first appeared in
the Constitution of 1885.  The Constitution of 1838 and
1861 (for the period of the Confederacy), the Constitution
of 1865, nor the Constitution of 1868, made any provision
for such courts.  Prior to 1885 population was both sparse
and rural, crime was the exception, and means for the trial
and punishment of criminals was amply provided for in
the circuit and inferior courts, consequently no demand
arose for criminal courts of record.  When the demand
did arise in 1885 they were only authorized in the ''County

of Escambia and upon application of a majority of the registered voters in such other counties as the Legislature may deem expedient."

Those provisions of Article V relating to criminal courts of record which we are called on to interpret for the purpose of answering the questions raised in this cause are Sections 1, 24 and 25, and are as follows:

"Section 1. (As amended at general election, 1914.) The judicial power of the State shall be vested in a Supreme Court, Circuit Court, Court of Record of Escambia County, Criminal Courts, County Courts, County Judges and Justice of the Peace Courts, and such other courts or commissions as the Legislature may from time to time ordain and establish. The Legislature may prescribe the compensation of the justices and judges of the several courts, but no court heretofore established under the Constitution and the Laws of Florida shall be hereby abolished."

As originally written in the Constitution of 1885, Section 1 was as follows:

"Section 1. The judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Criminal Courts, County Courts, County Judges Courts, and Justice of the Peace Courts."

"Section 24. There shall be established in the County of Escambia, and upon application of a majority of the registered voters in such other counties as the legislature may deem expedient, a Criminal Court of Record, and there shall be one judge for each of the said courts, who shall be appointed by the Governor and confirmed by the Senate, who shall hold his office for four years, and whose salary shall be One Thousand Dollars a year, the counties paying the salaries."

"Section 25. The said courts shall have jurisdiction of

all criminal cases not capital which shall arise in said counties respectively.''

It is first contended that Chapter 11975, Acts of 1927, creating the Court of Crimes for Hillsborough County trenches on the jurisdiction of the Criminal Court of Record. Whether or not the legislature was authorized to create a court of crimes in Hillsborough County and vest it with jurisdiction to try all misdemeanors is in its last analysis determined by the scope and effect that should be given to the words, ''such other courts or commissions as the legislature may from time to time ordain and establish'' as used in Section 1 of Article V, defining the judicial power of the State and the words ''jurisdiction of all criminal cases not capital'' as used in Section 25 of Article V defining the jurisdiction of criminal courts of record.

Chapter 11975, Laws of Florida, creates a ''Court of Crimes in each county in the State of Florida which alone constitutes a judicial circuit for which there is provided by law two or more resident judges and having a population of more than one hundred thousand according to the last State census.'' The Act further defines the jurisdiction of the said Court of Crimes, provides for a judge of said court, fixes his term and compensation, and designates who shall be sheriff, clerk and prosecuting officer thereof, and prescribes their powers and duties.

The authorization of ''Such other courts or commissions as the legislature may from time to time ordain and establish'' was an amendment to the Constitution adopted in 1914. This amendment had a very material effect on many sections of Article V. It repealed Section 9 *in toto* and modified Section 1 and Section 35 as amended in 1910, so as to enable the legislature to establish additional courts and commissions, the necessity for and the locality of such additional courts and commissions being committed to legislative discretion. In authorizing additional courts

and commissions said amendment necessarily authorized the legislature to prescribe and regulate the jurisdiction thereof within the limitations contained in Article V affecting the jurisdiction of courts already enumerated and established thereby. In so authorizing the legislature to prescribe and regulate the jurisdiction of such additional courts and commissions as it may ordain and establish, the said amendment necessarily modified those sections of Article V pertaining to the jurisdiction of courts. When studied and analyzed historically we do not think any other conclusions can be reached as to the effect of the 1914 amendment to Section 1 of Article V. We do not understand the words ''jurisdiction of all criminal cases not capital'' as used in Section 25 of Article V of the Constitution defining the jurisdiction of criminal courts of record to imply or to be equivalent to ''exclusive'' jurisdiction in such causes. The word ''all'' as used in said Section 25 clearly has reference to and limits quantity of litigation. It does not affect classification or degree of litigation.

In the terminology of the law the word jurisdiction as applied to courts has a well defined meaning and there is nothing in its inherent nature which renders it exclusive. That there are classifications in jurisdiction is as well known and understood as are the classifications of nouns, verbs and adverbs, or the classifications of trusts and corporations. Jurisdiction may be exclusive or concurrent, original, appellate or final. These classifications are frequently recognized in the Constitution and statutes of our states. An inspection of Sections 5, 11, 17, 18 and 22 of Article V dealing with the jurisdiction of various courts comprising our judicial system discloses that circuit courts and the Supreme Court have original and concurrent jurisdiction in certain matters. In other matters a like rule applies to circuit and certain inferior courts, while

the circuit courts have "exclusive original jurisdiction in all cases in equity, also in all cases at law, not cognizable by inferior courts, and in all cases involving the legality of any tax assessment, or toll; of the action of ejectment and of all actions involving the title or boundaries of real estate, and all criminal cases not cognizable by inferior courts; and original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matter as the legislature may provide." (Section 11, Article V, Constitution.)

Jurisdiction then "is not like a grant of property which cannot have several owners at the same time." Two or more courts may have concurrent jurisdiction of the same subject matter, and the rule is well settled that when the Constitution or the statute in specific terms vests jurisdiction in any tribunal without the qualifying term "exclusive," or words of equivalent import, the legislature may in its discretion vest the like jurisdiction in another court or tribunal. Hays v. McNealy, 16 Fla. 406; State *ex rel.* v. Quigg, 83 Fla. 1, 90 So. 695; American Railway Express Co. v. Weatherford, 86 Fla. 626, 98 So. 820; Delafield v. State, 2 Hill (N. Y.) 159; Courtwright v. Bear River etc. Co., 30 Cal. 573; Woods v. McCay, 33 L. R. A. 97; Johnson v. Happell, 4 Tex. 96; DeLeon v. Walters, 163 Ala. 499, 50 So. 934; Jones v. Reid, 3 Wash. 57, 27 Pac. 1067; Burks v. Walker, 25 Okla. 353; 109 Pac. 544; Strickland v. Seaboard Air Line Ry. Co., 112 S. C. 67, 98 S. E. 853; Higgins v. Tax Assessors, 27 R. I. 401, 63 Atl. 34; Terry v. State, 70 Neb. 147, 110 N. W. 733; Clepper v. State, 4 Tex. 242, 7 R. C. L. 1068; Gottschall v. Campbell, 234 Pa. 347, 83 Atl. 286; Attorney General v. Scott, 52 Col. 59, 120 Pac. 126; Murphy v. State, 4 Ala. App. 14, 58 So. 671.

A cognate question was considered by the Supreme Court of the United States in Bors v. Preston, 111 U. S. 252, 28

L. Ed. 419. In this case the court was called on to construe Sections 1 and 2 of Article III of the Federal Constitution, the parts of which are pertinent to this discussion provide:

"Section 1. The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."

"Section 2. In all cases affecting ambassadors, other public ministers and consuls, and those in which a State shall be party, the Supreme Court shall have original jurisdiction."

Discussing the scope and effect of the term "original jurisdiction" of the Supreme Court of the United States in all questions affecting ambassadors, other public ministers and consuls, as employed in Section 2 so quoted, that court held that it was in the power of Congress to vest concurrent jurisdiction of such cases in the circuit court of the United States. Ames v. Kansas, 111 U. S. 449, 28 L. Ed. 482; U. S. v. Ravors, 2 Dallas 297, 31 L. Ed. 69; Preley v. Luco, 76 Fed. 146; Gittings v. Crawford, No. 5465, Fed. Cas. U. S. v. Louisiana, 123 U. S. 32, 31 L. Ed. 69.

By parity of reasoning, if it is competent for Congress to vest concurrent jurisdiction of cases affecting ambassadors and other public ministers in the Circuit Courts of the United States when the Federal Constitution vested "original jurisdiction" of such cases in the Supreme Court of the United States it would seem competent for the Legislature of Florida to vest in the court of crimes "concurrent original jurisdiction" of all cases of misdemeanors when the Constitution of Florida vested in the Criminal Court of Record "jurisdiction of all criminal cases not capital."

If "jurisdiction of all criminal cases not capital" as defined in Section 25 of Article V of the Constitution is equivalent to or means "exclusive" jurisdiction as petitioner contends then it is exiomatic that the same rule must apply to the jurisdiction of justice of the peace courts as defined in Section 22 and to the jurisdiction of county courts as defined in Section 18 and to the jurisdiction of county judges' courts as defined in the Section 17, and to that part of the jurisdiction of circuit courts not "exclusive" as defined in Section 11 of the same Article. If this rule determines the jurisdiction of these courts, it necessarily follows that the jurisdiction of civil courts of record as defined by Section 3310, Revised General Statutes of Florida, as amended by Chapter 8521, Acts of 1921, and possibly the jurisdiction of juvenile courts, both of which were created pursuant to Section 1 of Article V of the Constitution as amended in 1914, is largely, if not totally, invalidated. The net result of which is that no field is left for the operation of "such other courts or commissions" as may be created.

It is contended by defendant in error that since Section 1 of Article V of the Constitution does not authorize the legislature to prescribe the jurisdiction of such courts or commissions as it may ordain and establish, jurisdiction for said courts and commissions cannot be provided by vesting them with a part of the jurisdiction of the courts already designated in the Constitution and that the only effect of the 1914 amendment to Section 1 was to remove the limitations on the establishment of other additional courts as defined in Section 35 of Article V of the Constitution. It is further contended on this point that the civil court of record is one of the "inferior courts" recognized in Section 11 of Article V of the Constitution.

We do not think this contention is well grounded. The

power to create "such other courts or commissions as the Legislature may from time to time ordain and establish" not only removes the limitation on the establishment of additional courts as recited in Section 35 of Article V, but it necessarily implies the power to clothe said courts or commissions which may be established with jurisdiction to hear and determine such causes as may be legally presented to them, and so long as the jurisdiction of other courts named in the Constitution is not exclusive it is within the power of the Legislature to vest such courts or commissions as it may see fit to establish with jurisdiction original or concurrent with the jurisdiction of those courts recognized in the Constitution. To authorize additional courts as the exigencies of the times and conditions demand was a perfectly reasonable thing to do, but to undertake to write in the fundamental law the jurisdiction of a court or courts to be established in the next decade or the next generation in a rapidly developing commonwealth with all the varied resources of Florida was impractical if not impossible to do.

As to the scope of the term, "inferior courts," employed in Section 11 of Article V, it is sufficient to say that it had reference to any or all of those courts inferior to circuit courts provided for in the Constitution at the time of its adoption, but we think that said term may now embrace not only those originally provided for, but all those which may be established pursuant to Section 1 of Article V, as amended in 1914.

We therefore conclude that the power to create "such other courts and commissions as the Legislature may from time to time ordain and establish," was ample authority for the Legislature to provide a court of crimes in Hillsborough County and to clothe it with jurisdiction concurrent with the criminal court of record in all cases of misdemeanor, that the jurisdiction of the criminal court of

record in "all criminal cases not capital" as defined in Section 25 of Article V is not equivalent to or co-ordinate with "exclusive" jurisdiction in such cases, and that the Act brought in question does not take away or attempt to take away any power from the criminal court of record vested in it by the Constitution.

But it is contended by defendant in error that even if it could be done constitutionally, Chapter 11975, Acts of 1927, not only fails completely to vest concurrent jurisdiction in all cases of misdemeanor in the court of crimes and the criminal court of record, but that it is so contradictory in its terms that it destroys any basis for concurrent jurisdiction as to said causes in said courts. This contention is predicated on the showing that after defining the jurisdiction of the court of crimes the Act provides that the clerk of said court shall transfer to the docket of the court of crimes all cases of misdemeanors pending in the criminal court of record, and that thereafter the county solicitor shall file all informations in the criminal court of record and they shall immediately be transferred to the docket of the court of crimes, thus removing jurisdiction of misdemeanors from the criminal court of record contrary to Section 25 of Article V of the Constitution.

The predicate for this contention is embraced in Section 1 and 12 of Chapter 11975, Acts of 1927. Section 1 of said Act defining the jurisdiction of the court of crimes provides that "the said court shall have concurrent original jurisdiction with the criminal court of record of said county in all cases of misdemeanors." Section 1 further provides that "the county solicitor of such county shall be the prosecuting officer of said court of crimes, and the prosecutions in said court shall be by information filed by the county solicitor of such county; such information to be filed in the criminal court of record of said county and

immediately transferred by the clerk of said court to the court of crimes and docketed in a separate docket to be kept for that purpose.'' Section 12 of the Act provides that ''immediately upon the establishment of a court of crimes in any county the clerk of the criminal court of record of such county shall cause to be transferred to and docketed in the said court of crimes all cases of misdemeanors pending in such criminal court of record.''

The words ''shall have concurrent original jurisdiction with the criminal court of record in all cases of misdemeanors'' determines the jurisdiction of the court of crimes. The fact that the clerk of the criminal court of record is required to transfer to the docket of the court of crimes all information for misdemeanors pending in said court at the time of the creation of the court of crimes or which may thereafter be brought therein in no way disturbs the jurisdiction of the criminal court of record. Its jurisdiction is retained until the cause is finally disposed of, and while we do not decide that question, it may be that the judge of the criminal court of record can take up and try causes pending in the court of crimes. The court of crimes is a separate and distinct institution, though in a sense it may be said to be an arm or auxiliary of the criminal court of record. In the same sense may the civil court of record be an arm or auxiliary of the circuit court. The jurisdiction of the court of crimes and the criminal court of record is concurrent as to misdemeanors, they have the same clerk, sheriff, prosecuting attorney, methods of procedure in the disposition of causes, and the same number of terms of court in each year. These objections may go to the structure and administration of the Act creating the court of crimes, but they will not affect the constitutional validity of it if the substance of the entire Act fully reveals a purpose that can be administered.

It cannot be said that Chapter 11975 is artistically drawn. It is, in fact, materially lacking in the attributes of good draughtmanship, but this does not render it invalid if there can be gleaned from the whole body of the Act a clear, definite legislative intent. In statutory construction, legislative intent is the pole star by which we must be guided and this intent must be given effect even though it may appear to contradict the strict letter of the statute and well settled canons of construction. The primary purpose designated should determine the force and effect of the words used in the Act and no literal interpretation should be given that leads to an unreasonable or ridiculous conclusion or a purpose not designed by the lawmakers. Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759; Willis v. Special Road & Bridge District, 73 Fla. 446, 74 So. 495; State *ex rel.* Luning v. Johnson, 71 Fla. 363, 72 So. 477; Curry v. Lehman, 55 Fla. 847, 47 So. 18; Payne v. Payne, 82 Fla. 219, 89 So. 538; Axtell v. Smedley & Rogers Hardware Co., 59 Fla. 431, 52 So. 710.

It is next contended that the basis for classification of counties in which courts of crimes are created is irrational, unreasonable and arbitrary.

Chapter 11975 creates a ''court of crimes in each county of the State of Florida which alone constitutes a judicial circuit for which there is provided by law two or more resident circuit judges and having a population of more than 100,000 according to the last State census.''

We do not think this provision of the Act subject to the assault made on it. It was admitted at the bar that if a court of crimes could be legally created it was competent for the legislature to create such court in Hillsborough county or in any other county of the State. The constitutional authority for courts of crimes as provided in Section 1 of Article V. has been fully covered in this opinion

and will not be further discussed here. It is well known that we have judicial circuits of a single county with two or more circuit judges. Population is also recognized by law as a reasonable basis for classification. If it is competent for the legislature to create by general or special law a court of crimes in any county of the State then it must be competent to create them in such counties as compose a judicial circuit having two or more judges and a population of more than 100,000.

In this holding we are mindful of the fact that classifications adopted by the legislature cannot be arbitrary or unreasonable; they must bear some just relation to the Act and the subject regulated, but the question of classification becomes unimportant in this case because the power to create additional courts or commissions is exclusively a legislative discretion and there is no showing here of an abuse of this discretion.

It is last contended that Chapter 11975 in effect creates an additional judge for the criminal court of record contrary to the provisions of Section 24 of Article V of the Constitution.

This contention is based upon that part of Section 24 of Article V authorizing the creation of the criminal courts of record which provides that "there shall be one judge for each of said courts" and the further fact that the clerk, sheriff, prosecuting attorney, procedure and jurisdiction as to misdemeanors was the same in the court of crimes as in the criminal court of record. What has been said in this opinion on the subject of courts and their jurisdiction is a complete answer to this question. We might add, however, that Article V of the Constitution as originally adopted prescribed a hard and fast rule for the organization of the judicial department of the State government. The courts composing said department and their jurisdiction

were specifically set out. The 1914 amendment to Section 1 relaxed the terms of ArticleV and vested in the legislature power to create additional courts and commissions, to aid or supplement those already provided when the need for them was pressing. We cannot conceive of a court without a judge and jurisdiction to hear and determine matters properly presented to it. A judge and jurisdiction are in other words the necessary legal prerequisites to constitute a court, and stripped of them it would be a nonentity. The power, therefore, to create a court necessarily implies the power to clothe it with jurisdiction and provide for the appointment or election of a judge to exercise that jurisdiction.

If the jurisdiction of the criminal court of record was "exclusive" as to all criminal cases not capital and Section 1 of Article V had remained as originally incorporated in the Constitution, this case might be ruled by the doctrine announced in State v. Butler, 70 Fla. 102, 69 So. 771, but since the jurisdiction of criminal cases not capital is not exclusive in the criminal court of record and the amendment to Section 1 of Article V authorizes "such other courts and commissions as the legislature may from time to time ordain and establish," we do not think the rule announced in State v. Butler, *supra,* has any influence on this case.

We have given careful consideration to all the questions raised and in doing this our labor has been greatly lightened by very able briefs and argument of counsel on both sides. Our conclusion is that the presumptions in favor of the validity of the Act assaulted have not been overcome. One seeking to strike down an Act of the legislature is in the outset confronted with the presumption that it is valid, that all doubts as to its constitutionality must be resolved in

favor of its validity and that the terms of the Act must be construed to effect the legislative intent if that be possible.

These presumptions abide with every legislative Act till overcome and not having been successfully assaulted we think Chapter 11975, Acts of 1927, was a lawful exercise of the power vested in the legislature by Section 1 of Article V of the Constitution so the judgment below is reversed and the petitioner is ordered remanded.

Reversed.

WHITFIELD, P. J., STRUM, BROWN AND BUFORD, J. J., concur.

ELLIS, C. J., dissents.

STRUM, J. (concurring):

The legislature having the power in the manner prescribed in the Act to create the Court of Crimes and invest it with concurrent jurisdiction with the Criminal Court of Record in all cases of misdemeanors, the power also exists in the legislature by necessary implication to provide for all necessary incidents without which the court could not be properly organized and without which it could not properly function. State v. Ecthman, 88 S. W. Rep. 643. If the Act be construed as mandatorily requiring every prosecution for misdemeanor to be certified to the Court of Crimes, thereby excluding the Criminal Court of Record from the trial of all such cases, it might be in that respect repugnant to the Constitution. If, however, those portions of the Act relating to the certification of misdemeanor cases from the Criminal Court of Record to the Court of Crimes be construed as directory, which is recognized as a proper construction of the word "shall" in certain instances of statutory construction, the objection that the

Act operates to deprive the Criminal Court of Record of a part of its constitutional jurisdiction is obviated. So construed, the Act bestows upon the clerk discretionary authority to certify misdemeanor cases to the Court of Crimes, though not destroying or impairing the constitutional *jurisdiction* of the Criminal Court of Record in respect to that class of cases. The activities of the clerk in this behalf are, of course, subject to the powers of the judge of the Criminal Court of Record in respect to cases within the jurisdiction of that court. I appreciate the fact that such a construction of the Act may occasion the practical criticism that whether or not the Court of Crimes receives any cases to try is dependent primarily upon the act of one of its ministerial officers. That situation, while perhaps anomalous, is not fatal to the constitutionality of the Act. That criticism would relate to the practical operation of the Act, not to its constitutional validity. The court's "jurisdiction" may exist notwithstanding the fact that no cases are assigned to it to be tried. "Jurisdiction" is the power of a court to hear and determine a cause. The existence of that jurisdiction does not depend upon the proper assignment to it of specific cases to be tried. See Blackstad Merch. Co. v. Bond *et al.*, 148 S. W. Rep. 262.

It is our duty to sustain the legislative will when it is not in positive conflict with organic law, even when that will is veiled in some obscurity and presents a course which might perhaps produce an anomalous situation in the event such ministerial officer acts obstinately or unwisely. It is presumed that the officer will do his duty, and we can not strike down a valid legislative act upon the mere prophesy that it may be subverted by improper official action of a ministerial officer whose functions are vital to the activities of the court, nor because it does not prescribe a method

for the assignment of cases which we might deem more practical and appropriate in the premises.

In a situation quite similar to that presented here, it was held by the Supreme Court of Georgia, that although the statute there under consideration contained no express provision for the assignment of the classes of cases under. consideration to the new court of coordinate jurisdiction, the judge of the existing court (which would correspond to the Criminal Court of Record in our situation) possessed the authority to certify cases to the new court under the broad terms of the Act and in view of its obvious purpose. Dismuke v. State, 31 S. E. Rep. 561. It is competent, I think, for the legislature to vest this authority in the clerk, subject to the constitutional authority of the judge of the Criminal Court of Record, although a better course of procedure might readily be conceived.

I concur in the views expressed by Mr. Justice TERRELL and Mr. Justice WHITFIELD and in the order of reversal.

WHITFIELD, P. J., AND TERRELL, BROWN AND BUFORD, J. J., concur.

WHITFIELD, J. (concurring):

Section 1, Article V, of the State Constitution, as amended in 1914, provides that the ''Judicial power of the State shall be vested in a Supreme Court, Circuit Court, Court of Record of Escambia County, Criminal Courts, County Courts, County Judges and Justices of the Peace and such other Courts or Commissions as the Legislature may from time to time ordain and establish.''

The object of the amendment was to authorize the legislature to provide additional courts ''from time to time'' as may be required for the due exercise of ''the judicial power of the State'' so that ''right and justice may be administered without sale, denial or delay,'' as required by Sec-

tion 4 of the Declaration of Rights. The quoted section of the Constitution as amended contemplates that when the legislature does "ordain and establish" "other courts" than those specified in the section, such "other courts" shall be vested with a portion of "the judicial power of the State," that had theretofore vested in the courts specifically named in the Constitution. Otherwise no purpose could be served in authorizing "other courts" to be "ordained and established" by the legislature. Surely the organic amendment did not intend that courts may be established without any jurisdiction, when the other courts already established could not dispose of all of the cases within their organic jurisdiction. The amended section specifically provides that the judicial power of the State shall be vested in named courts and in "other courts" to be established. The portion of "the judicial power of the State" "to be vested in" such "other courts" when "ordained and established" is of course to be determined by the law-making power of the State, subject to controlling provisions of the Constitution. In view of the amended organic provision that "judicial power of the State" may be vested in "such other courts * * * as the legislature may from time to time ordain and establish," as well as in the courts named in the section, the legislature may by law establish "other courts" and confer upon them such appropriate jurisdiction as is not forbidden by the Constitution. While an organic provision giving a named court *"exclusive"* jurisdiction of stated classes of causes might in effect forbid the exercise of that exclusive jurisdiction by another court; yet an organic provision giving a named court jurisdiction, but not exclusive jurisdiction, of *all* cases of a stated class, may not forbid the legislatnre to give to another court, established under the organic provision, concurrent jurisdiction with the court that has juris-

diction but not exclusive jurisdiction of *all* such cases. If this is not so, "other courts" that "the legislature may from time to time ordain and establish" cannot be vested with "judicial power of the State" as is expressly provided in amended Section 1 of Article V.

The amended, like the original organic section specifically provides that the judicial power of the State shall be vested in a Supreme Court, Circuit Courts, * * * "Criminal Courts" * * * &c. "Criminal Courts of Record" are not named in the section, but they may be established by the legislature under Section 24 of Article V. The "Courts of Crimes" established by Chapter 11975, Acts of 1927, are "Criminal Courts" as enumerated in amended Section 1 of Article V, and if that is not sufficient warrant for their creation, they may be established as "other courts" authorized by the organic section.

The Constitution does not establish the "Criminal Courts" referred to in the original and amended Section 1 of Article V; and it does not define the jurisdiction of "Criminal Courts," though the Constitution does define the jurisdiction of "Criminal Courts of Record" that may be established by the legislature, under Section 24, Article V.

As Section 24 of Article V specifically authorizes the legislature to establish "Criminal Courts of Record," the "Criminal Courts" specified in Section 1 of Article V may refer to other courts having criminal jurisdiction that may be established by the legislature, even though no jurisdiction for "Criminal Courts" is defined in the Constitution, while the jurisdiction of "Criminal Courts of Record" that may be established by the Legislature is defined in Section 25, Article V, of the Constitution. A "Court of Crimes" established by Chapter 11975, Acts of 1927, is given jurisdiction in criminal cases and if not one of the "Criminal

Courts," specifically referred to in the Constitution, it is one of the "other courts" the legislature is authorized to establish. The legislature may define the jurisdiction of courts that are duly created by it, where such jurisdiction is not defined by the Constitution in such terms as to exclude legislative action in the premises. See Section 13 of Article XVIII, Constitution..

Whether a "Court of Crimes" established by Chapter 11975, Acts of 1927 is a "Criminal Court" within the meaning of the organic section, or is one of the "other courts" that the Legislature may establish, it is designed by the Constitution to exercise a portion of "the judicial power of the State," and the jurisdiction of a court so established may be defined by the Legislature, even though the jurisdiction so defined is made concurrent with that of another court, having under the Constitution jurisdiction of all cases of a stated class, when the jurisdiction of the other court is not made *exclusive* by the Constitution.

Under Sections 24 and 26 of Article V of the Constitution the Legislature may establish and may abolish a criminal court of record; and when a criminal court of record is established by the Legislature, its jurisdiction is defined by the Constitution; but such jurisdiction is not definitely made exclusive; and since the amendment to Section 1 of Article V authorizing the Legislature to establish other courts than those specified in the Constitution, in all of which courts the same organic section vests "the judicial power of the State," the Constitution by necessary implication authorizes the Legislature to define the jurisdiction of courts established by it, provided the exclusive jurisdiction of courts given by the Constitution is not interfered with. Any jurisdiction conferred will be already exercised by existing courts. Where the jurisdiction of the pre-existing court is not made *exclusive* by the Constitution,

concurrent jurisdiction with such court may be given to the court established by the Legislature, in order that the court established by the Legislature shall be vested with a portion of "the judicial power of the State," as is expressly provided by the organic section that gives the Legislature authority to establish other courts than those enumerated in the Constitution.

The manifest intent of Section 1 of Article V as amended is that "the judicial power of the State shall be vested in" the enumerated courts "and in such other courts" as the Legislature may establish; and that the jurisdiction of the portion of "the judicial power of the State" that shall be exercised by the courts established by the Legislature, shall be defined by statute provided the jurisdiction of any court that is definitely made exclusive by the Constitution shall not be invaded. This is necessarily the intent of the organic section even though it does not expressly authorize the Legislature to fix or regulate the jurisdiction of the "other courts" that may be established by statute.

The statute establishing a court of crimes is authorized by the Constitution; and the provisions of the statute conferring upon such court concurrent jurisdiction with the Criminal Court of Record in misdemeanor cases, is within the intent and contemplation of amended Section 1 of Article V of the Constitution of the State of Florida. Any apparent or real ambiguity or inconsistency that may be in the statute, does not affect its validity under the Constitution or destroy its efficiency, particularly in view of the powers of the Judge of the Criminal Court of Record under the Constitution over cases within the jurisdiction of that court.

STRUM AND BUFORD, J. J., concur.

ELLIS, C. J., (dissenting) :

Clarence Sullivan was tried and convicted in the Court of Crimes of Hillsborough County for the offense of larceny. He was sentenced to imprisonment in the county jail and committed under that judgment to the custody of the sheriff of the county. He contended that his imprisonment was illegal because the court in which he was convicted had no legal existence because the Act of the legislature of 1927, Chapter 11975, creating and establishing such a court in Hillsborough County is unconstitutional and therefore void. He was discharged from custody by the Circuit Court of Hillsborough County on writ of *habeas corpus,* to which judgment the State took a writ of error.

The question of the validity of the Act creating the Court of Crimes is thus presented.

The Act is entitled ''An Act Creating a Court of Crimes in Each County of the State of Florida Which Alone Constitutes a Judicial Circuit for Which There is Provided by Law Two or More Resident Circuit Judges and Having a Population of More Than One Hundred Thousand According to the Last State Census; Prescribing the Jurisdiction of said Court; Providing for the Appointment of a Judge of said Court, Fixing His Compensation and Prescribing His Term of Office; Providing for a Clerk and Prosecuting Officer for said Court, and Prescribing Their Duties.''

The Act provides for the establishment of a Court of Crimes in each county which alone constitutes a judicial circuit where the law provides for two or more resident circuit judges, and which county has a population of more than one hundred thousand according to the last State census.

The court is given concurrent original jurisdiction with the Criminal Court of Record in such county in all cases of misdemeanors. It is provided that prosecutions in the Court of Crimes shall be by information filed by the

County Solicitor in the Criminal Court of Record and then immediately transferred by the clerk of that court to the Court of Crimes. If the judge of the latter court should be disqualified in any case then such case is retransferred to the Criminal Court of Record for trial. A judge is provided for the Court of Crimes, but the County Solicitor and clerk of the Criminal Court of Record are officers of the Court of Crimes. The Circuit Court is vested with appellate jurisdiction in all cases decided by the Court of Crimes.

Upon the establishment of this court all cases of misdemeanors pending in the Criminal Court of Record are to be transferred to the Court of Crimes.

There are some anomalies which may be noted in connection with such courts.

No such court may be established in Escambia County, because by reason of Sections 39, 40, 41 of Article V of the Constitution that county may not have a Crirminal Court of Record as by those amendments adopted in 1910, the Criminal Court of Record became merged in a Court of Record with both criminal and civil jurisdiction, and the Supreme Court has appellate jurisdiction in all causes of which jurisdiction is granted to the Court of Record in that county.

Criminal Courts of Record are established in other counties upon application of a majority of the registered voters as the legislature may deem expedient.

A Court of Crimes may not be established in any county which has less than a hundred thousand inhabitants ac cording to the last State census, which does not constitute of itself one judicial circuit which does not have two resident circuit judges of the Circuit Court and has no Criminal Court of Record.

No prosecution may originate in the Court of Crimes.

It must be begun by information filed by the County Solicitor in the Criminal Court of Record.

No misdemeanor may be tried in the Criminal Court of Record unless the judge of the Court of Crimes is disqualified.

The Court of Crimes under the terms of the Act has concurrent original jurisdiction with the Criminal Court of Record in all cases of misdemeanors, but the Court of Crimes must hear and determine all such cases unless the judge be disqualified.

Section 25, Article V of the Constitution, vests the Criminal Courts of Record with jurisdiction of all criminal cases not capital which arise in the county where there is a court of that character.

Jurisdiction is the power to hear and determine a controversy and to render the particular judgment in the particular case and power to enforce the judgment. The word embraces every kind of judicial action and hence every movement by a court is necessarily the exercise of jurisdiction. It is the right to adjudicate concerning the subject-matter in a given case. See 7 R. C. L. 1029; State of Rhode Island v. State of Massachusetts, 12 Pet. (U. S.) 657, 9 L. Ed. 1233; Grignon v. Astor, 2 How. (U. S.) 319, text 338, 11 L. Ed. 283, text 290; Applegate v. Lexington & C. Co. Min. Co., 117 U. S. 255, text 267, 29 L. Ed. 892, text 895, 6 Sup. Ct. Rep. 742.

Jurisdiction of the matter of all criminal cases not capital, Sec. 25, Article V Constitution, does not mean jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. Franklin Union No. 4 v. People, 220 Ill. 355, 77 N. E. Rep. 176, 4 L. R. A. (N. S.) 1001.

Now since the Court of Crimes only may hear and determine cases of misdemeanors, and to render the judg-

ment and enforce the same, that court and not the Criminal Court of Record has jurisdiction of that class of criminal cases except in special or particular cases where the judge of the Court of Crimes may be disqualified and then only when he makes an order transferring the cause to the Criminal Court of Record. See Section 7, Chapter 11975.

Such is the meaning of the language employed in the statute as I understand the significance of the words employed. If the Criminal Court of Record may hear and decide and enter judgment in any misdemeanor other than in particular cases where the judge of the Court of Crimes is disqualified, it must be in those cases in which the clerk of the Criminal Court of Record refuses to obey the mandatory provision of the statute to transfer the case to the Court of Crimes after the County Solicitor has filed the information in the Criminal Court of Record. But the jurisdiction of the Criminal Court of Record cannot depend upon such a breach of official duty. If upon the other hand the Criminal Court of Record still has jurisdiction under the Constitution of such causes then the provision requiring the clerk to transfer such cases is a nullity and may be disregarded at will, leaving the Court of Crimes without jurisdiction to try any cause whatsoever, as the information is required to be drawn by the County Solicitor and by him filed in the Criminal Court of Record. To say that the County Solicitor may draft an information, entitle and file it first hand in the Court of Crimes is to ignore the plain language of the statute.

If the statute had provided that all prosecutions of misdemeanors should be by information filed by the county solicitor in the court of crimes which should have jurisdiction to hear and determine the same, there would probably be no doubt that the legislative purpose was to deprive the criminal court of record of jurisdiction in such class of cases. I am of the opinion that the identical purpose is

sought to be accomplished by requiring the clerk of the criminal court of record to immediately transfer the information to the court of crimes after it has been filed in the criminal court of record.

The argument that because the legislature is empowered by the constitutional amendment proposed in 1913 and adopted in 1914 to ordain and establish other courts or commissions than those enumerated in the amendment, it has power to define the jurisdiction of such courts or commissions, is of no comfort to those who contend that the jurisdiction prescribed by the Constitution to be exercised by the courts enumerated therein may be divided between different courts or commissions of the legislature's creation, by simply calling them courts or commissions of concurrent jurisdiction with that of some other court named in the Constitution, because that is merely a use of the old fallacy of taking the conclusion itself as one of the premises of an argument. The proposition to be proved is that the court of crimes may exercise jurisdiction of all cases of misdemeanors in Hillsborough county. The facts are that the Constitution vests that jurisdiction in a criminal court of record and empowers the legislature to ordain and establish "other courts or commissions," but makes no provision as to the jurisdiction of such "courts or commissions." The argument is that since the legislature has created the "court of crimes" with jurisdiction of misdemeanors, and as all "courts or commissions" created by the legislature must have jurisdiction, therefore the court of crimes has jurisdiction of misdemeanors.

If the argument is sound it follows that if the legislature had undertaken to vest in the "court of crimes" or any new "court or commission" by a different name with jurisdiction to issue writ of mandamus—injunction, *quo warranto* or other extraordinary writs or with original con-

current jurisdiction with the circuit courts of forcible entry and unlawful detainer, or final appellate jurisdiction with the circuit court in all cases of misdemeanor decided by the criminal court of record, or appellate jurisdiction with the Supreme Court of all cases of felonies or civil cases decided by either the criminal courts of record or circuit court, it would have been a valid exercise of legislative matters. In none of such matters are the courts which are named in the Constitution vested with "exclusive" jurisdiction in terms.

My interpretation of the amendment of 1913, adopted in 1914, is that the phrase "Such other courts or commissions as the legislature may from time to time ordain and establish," merely provides for the exercise of judicial agencies in matters where it becomes the policy of the State to exempt in part certain classes of its citizens from the usual or customary processes or penalties of the law. As, for instance, the establishment of juvenile courts where offenses committed by persons of tender years who by reason of youth, inexperience and ignorance may be regarded as somewhat less responsible for their actions than the normal adult, and other particular "courts or commissions" not necessarily judicial courts, such as courts of land registration as in Massachusetts; a court of mediation and arbitration as in Michigan; a court similar to the English court of faculties to determine the qualifications of persons desiring to be married; a court of forestry and game; a court for divorce and matrimonial causes; a court for the investigation of inebriates and drug addicts. There is a great field which opens as the complexities of social growth multiply for the use of that constitutional provision, but where the constitutional court is expressly vested with jurisdiction of all cases of a certain class, it is begging more than a bit at the leash of the organic law to sustain

a legislative creation which deprives any one of the constitutional courts of any portion of its jurisdiction.

I am also of the opinion that the Act is in conflict with the Constitution because under its terms it cannot be made applicable to Escambia county of this State without a constitutional amendment. In other words, one of the counties of this State cannot ever come within the classification prescribed by the statute because that county can have no criminal court of record without a constitutional amendment. There are many counties in the State that cannot now come within the classification adopted by the statute, when courts of crimes become automatically established under the statute, but they are all potentially within its terms except the county of Escambia, which is excluded from the alleged benefits of the Act by constitutional limitations. In all other countries the population may grow to one hundred thousand, the legislature may create of each county a judicial circuit, provide for two circuit judges resident therein and create a criminal court of record, when in such case a court of crimes becomes automatically established therein, but Escambia county is excluded by constitutional provision from participating in or enjoying the benefits of this beneficent legislation. It cannot have a criminal court of record. The legislature has not the power to establish one in that county.

The Act is therefore local, special and class legislation and is obnoxious to Article III, Section 20, of the Constitution.

The fundamental idea and basis of all classification is inequality, but among the political subdivisions of the State there can be no inequalities. The Act, however, undertakes a classification of political subdivisions upon certain distinctions which excludes one of them from the possibility

of inclusion within its provisions and thus attempts by its very terms an inequality which politically can not exist.

I think the judgment should be affirmed.