ERVIN, Justice
(agreeing in part and dissenting in part).
There are numerous cases decided by this Court which hold that additional duties and ex officio authority may be vested in an official, whether serving in the executive or judicial branch of the government, where such official has already been commissioned through the elective or appointive process.
See Whitaker v. Parsons, 80 Fla. 352, 86 So. 247; Lainhart v. Catts, 73 Fla. 735, 75 So. 47; Hardee v. State ex rel. Gaines, 83 Fla. 544, 91 So. 909, and Amos v. Mathews, 99 Fla. 1, 126 So. 308. In the last cited case, on page 335 (So.Rep.) the Court points out these examples:
“ * * * The trustees of the internal improvement fund, board of commissioners of Everglades drainage district, Okeechobee flood control district, the railroad assessment board, the pension board, insurance commissioner, the 'Blue Sky’ board, state livestock sani *10 tary board as first created, and others are common instances in which administrative boards have been composed of one or more constitutional state officers and been vested with additional governmental functions.”
Neither § 27 of Art. Ill, nor § IS, Art. XVI, of the State Constitution, has presented any impediment to this Court in reaching the above stated conclusion.
In State ex rel. Landis, Atty. Gen. v. Reardon, 114 Fla. 755, 154 So. 868, the Court held a statute may require county officers to perform duties for a district extending over more than one county without violating the foregoing constitutional provisions. See 9th headnote.
In Flood v. State ex rel. Board of County Com’rs, etc., 100 Fla. 70, 129 So. 861, it was held no violation of § 15, Art. XVI to constitute the Clerk of the Criminal Court of Record of Dade County also the Clerk of the Civil Court of Record of said County, since it amounted merely to imposition of additional duties upon him as a former officer. See headnote 8.
In State ex rel. Gibbs v. Gordon, 138 Fla. 312, 189 So. 437, a statute creating a county air base authority and designating county commissioners as its ex officio governing body was held not violative of § 15 of Art. XVI.
In State ex rel. Watson, Atty. Gen. v. Caldwell, 156 Fla. 618, 23 So.2d 855; our Court held a statute designating the chairman of the State Road Department as an ex officio member of the State Improvement Commission did not violate § 27 of Art. Ill because the Legislature may impose additional duties on constitutional or statutory officers so long as such duties are not inconsistent with their duties imposed by the Constitution or statutes. See 1st and 2nd headnotes.
In State v. Florida State Turnpike Authority (Fla.), 80 So.2d 337 (1955), the Court held there was no violation of either § 27, Art. Ill or § 15 of Art. XVI, in an act creating the Florida State Turnpike Authority, which provided that one member thereof should be a member of the State Road Department upon designation as such by the Governor. See 10th headnote.
Many courts or the judges thereof act or sit in a dual capacity in our state. For example, county judges in many counties also serve as juvenile judges (F.S. Chapter 39, F.S.A.). Attention is called to a specific example expressly approved by our Court. The Legislature, by Ch. 25574, Acts of 1949 established a civil claims court in Hills-borough County and authorized the senior circuit judge of the county to be the presiding judge thereover to try civil claims cases ranging in jurisdictional amounts from $100 to $1,000. This act was upheld in State ex rel. Murphy-McDonald Builders’ Supply Co. v. Parks (Fla.), 43 So.2d 347, the Court following State v. Sullivan, 95 Fla. 191, 116 So. 255, which held constitutional an act creating a court of crimes in Hillsborough County giving it concurrent jurisdiction of misdemeanor cases with the criminal court of record of said county.
In State v. Sullivan this Court in construing Art. V of the State Constitution said:
“[7] Jurisdiction then ‘is not like a grant of property which cannot have several owners at the same time.’ Two or more courts may have concurrent jurisdiction of the same subject matter, and the rule is well settled that when the Constitution or the statute in specific terms vests jurisdiction in any tribunal without the qualifying term ‘exclusive,’ or words of equivalent import, the Legislature may in its discretion vest the like jurisdiction in another court or tribunal. * * *
“ * * * and so long as the jurisdiction of other courts named in the Constitution is not exclusive it is within the power of the Legislature to vest such courts or commissions as it may *11 see fit to establish with jurisdiction original or concurrent with the jurisdiction of those courts recognized in the Constitution. To authorize additional courts as the exigencies of the times and conditions demand was a perfectly reasonable thing to do, but to undertake to write in the fundamental law the jurisdiction of a court or courts to be established in the next decade or the next generation in a rapidly developing commonwealth with all the varied resources of Florida was impractical if not impossible to do.
“[10] As to the scope of the term ‘inferior courts’ employed in section 11 of article 5, it is sufficient to say that it had reference to any or all of those courts inferior to circuit courts provided for in the Constitution at the time of its adoption, but we think that said term may now embrace not only those originally provided for, but all those which may be established pursuant to section 1 of article 5, as amended in 1914.”
In that case it said specifically with respect to the Court of Crimes of Hillsbor-ough County:
“[11] We therefore conclude that the power to create ‘such other courts or commissions as the Legislature may from time to time ordain and establish’ was ample authority for the Legislature to provide a court of crimes in Hillsborough county and to clothe it with jurisdiction concurrent with the criminal court of record in all cases of misdemeanor, that the jurisdiction of the criminal court of record in ‘all criminal cases not capital,’ as defined in section 25 of article 5, is not equivalent to or co-ordinate with ‘exclusive’ jurisdiction in such cases, and that the act brought in question does not take away or attempt to take away any power from the criminal court of record vested in it by the Constitution.”
To the same effect, see State ex rel. New York v. Beckham, 160 Fla. 810, 36 So.2d 769, relating to the powers of juvenile courts.
We denote nothing in present Art V of the State Constitution as last revised which conflicts with the foregoing pronouncements in State v. Sullivan and State ex rel. New York v. Beckham, supra.
In State ex rel. Murphy-McDonald Builders’ Supply Co. v. Parks, supra, it was contended that the act creating the Civil Claims Court of Hillsborough County and constituting the senior circuit judge of Hillsbor-ough County the presiding judge thereover violated §§ 11 and 18 of Art. V of the Constitution, in that it attempted to give said circuit judge concurrent jurisdiction with the County Court of Hillsborough County. This Court rejected this contention in these words:
“ * * * We do not think there is any substance to this contention. Section 11 of Article V of the Constitution, defining the jurisdiction of the Circuit Court in terms authorizes the legislature to clothe it with jurisdiction of other matters, and in State v. Sullivan we held that the legislature might vest coordinate jurisdiction in two courts, provided the ‘exclusive’ jurisdiction of neither of them was invaded.” (Emphasis supplied.)
Long before State v. Sullivan and State ex rel. Murphy-McDonald Builders’ Co. v. Parks, it was ruled in Ferrell v. Reed (1910), 60 Fla. 62, 53 So. 935, that:
“Section 11 of article 5 of the state Constitution, providing that ‘the circuit courts shall have exclusive original jurisdiction in all cases in equity, also in all cases at law, not cognizable by inferior courts, * * * and of such other matters as the Legislature may provide/ and section 22 of such article 5, providing that ‘justices of the peace shall have jurisdiction in cases at law in which the demand or value of the *12 property involved does not exceed one hundred dollars,’ etc., are not a limitation upon the power of the Legislature to confer upon the circuit courts jurisdiction in cases involving a less value than $100, since the jurisdiction so conferred upon justices of the peace and county judges in such cases, though original, is not exclusive.” (Emphasis supplied.)
Even in the appellate area, our Court has indicated special appellate courts can be established under § 1, Art. V of the Constitution utilizing personnel of the circuit courts to preside over them. However, they may not invade the “exclusive” jurisdiction of an existing appellate court. For example, in The Western Casualty & Surety Co. v. Rotter, 139 Fla. 854, 191 So. 78, it was held:
“The Legislature has authority to create appellate courts composed of circuit judges to review judgments of the civil court of record and to provide the procedure for such review. Acts 1931, Ex.Sess., c. 15666, § 3, 8; Const, art. 5, § 1.” See also Cates v. Heffernan, 154 Fla. 422, 18 So.2d 11.
In Cormack v. Coleman, 120 Fla. 1, 161 So. 844, a statute providing for the assignment of a circuit judge to hold a regular or special term of a criminal court of record, civil court of record, or court of crimes, in the absence of the regular judge was held not violative of the Constitution.
In 67 C.J.S. Officers § 23, p. 141, the text reads:
“Statutes conferring on judges already in office additional jurisdiction or imposing additional duties on them are not in violation of a constitutional provision that they shall hold no other office.”
The State of Alabama’s constitution is not unlike ours in respect to the subjects here considered. The Supreme Court of Alabama held in the case of State ex rel. Clarke v. Carter (1911), 174 Ala. 266, 56 So. 974, as follows:
“12. OFFICERS (§ 30) — HOLDING TWO OFFICES AT ONE TIME-STATUTES.
“Loc. Acts 1911, p. 274, establishing an inferior civil court for the city of Mobile, and providing that the judge of the inferior criminal court of Mobile county established by Loc. Acts 1898— 99, p. 1164, shall act as the ex officio judge of the civil court, is not violative of Const.1901, § 280, providing that no person shall hold two offices at one time, since the act does not create any additional office, but merely provides that the judge of the inferior criminal court shall perform the duties pertaining to the new court, and since the Constitution does not forbid the consolidation of two or more offices, nor prohibit the Legislature from imposing additional duties on existing officers.”
Section 1 of Art. V of the Florida Constitution authorizes the Legislature to create inferior or subordinate courts, including small claims courts. It has established small claims courts throughout the state by general act, prescribing their jurisdiction at $250 to $300 respectively, depending upon the population of the county (F.S. Section 42.03, F.S.A.). Several such small claims courts have also been created by special acts. This constitutional authority of the Legislature to establish a small claims court is not restricted by the civil jurisdictional amount of $100 prescribed for justices of the peace courts by § 11(2) of Art. V of the Florida Constitution, if the Legislature determines it is wise to constitute a justice of the peace an ex officio small claims court judge. Merely because the Legislature in its wisdom confers the ex officio role of a small claims court judge upon a justice of the peace does not carry with the role the constitutional limitation of the justice of the peace court civil jurisdictional amount of $100. State ex rel. Murphy-McDonald *13 Builders’ Supply Co. v. Parks, supra, and other cases cited, indicate the Legislature may create special subordinate courts, using the personnel of existing courts to man them and that they may be given concurrent jurisdiction with, or greater jurisdiction than an existing court, except, however, the jurisdiction given them may not invade the “exclusive” jurisdiction of a constitutional court. Without the slightest claim of “invasion,” small claims courts in our state traditionally have been given concurrent civil jurisdiction with justice of the peace courts and as a rule such small claims courts are given greater civil jurisdiction than the Constitution allows justices of the peace, and this may be done whether the small claims court judge is or is not also a justice of the peace. The person authorized to wear the two judicial hats in Pinellas County is limited to $100 civil jurisdiction only when he sits as a justice of the peace. When he takes off his justice of the peace hat and puts on his other hat and sits as the small claims court judge the $300 jurisdictional amount applies to him without limitation.
State ex rel. David Bialeck, Inc. v. Ferguson (1952), 58 So.2d 145, which reached a contrary result from that here indicated, may be reconsidered in the light of § 26(7) of Art. V of the State Constitution adopted in the constitutional amendment of 1956 and reading as follows:
“(7) All trial courts as organized and ■constituted on the effective date of this Article shall, except as otherwise provided herein, continue with their jurisdiction, judges and officers, including the manner of their election or appointment, until otherwise provided by the legislature.” (Emphasis supplied.)
Under this provision the civil jurisdiction of justice of the peace courts of $100 may not be changed by the Legislature since the same is expressly provided in § 11 of Art. V, but inasmuch as such civil jurisdiction is not exclusive in the justice of the peace courts there is nothing in § 1 or in § 26(7) of Art. V which precludes another court heretofore or hereafter established by the Legislature from being given concurrent civil jurisdiction therewith, nor is there any provision in the Constitution which prohibits the Legislature from conferring additional judicial duties including ex of-ficio functions upon a justice of the peace that are not inconsistent with his existing duties. Section 26(7) of Art. V clearly expresses the constitutional intent that it lies within the power of the Legislature to change the jurisdiction and the judges of all trial courts unless the Constitution otherwise provides. There appears to be no impediment in the Constitution preventing the Legislature from changing the presiding judge of a small claims court so that a justice of the peace shall thereafter be the ex officio judge thereof. I see no inconsistency in a justice of the peace serving as ex officio small claims court judge. Since a justice of the peace can try civil claims of $100 or less it certainly is no more burdensome to him or inconsistent with his duties as justice of the peace to try civil claims in amounts not exceeding $300 as ex officio small claims judge.
The trend of judicial system reform in our state seeks to avoid the further proliferation of trial courts by consolidating them and using existing judicial personnel wherever possible, looking toward the goal of a one trial court system or reasonable variants thereof. (See the long list of trial courts, pp. 85-105, inch, Vol. 3, Florida Statutes 1963.) The interchange of trial judges as here permitted is a salutary method for facilitating the dispatch of judicial business and serves the ends of economy by avoiding duplication and the necessity of constituting new subordinate trial courts and judges therefor.
I find no objection to the constitutionality of Chapter 61-648, Laws of Florida 1961, because it was passed as a population act. See State v. Sullivan, supra, (headnotes 14 and 15), and State ex rel. Murphy-McDon *14 ald Builders’ Supply Co. v. Parks, supra (headnotes 1 and 2). In those two cases the population brackets in the acts involved referred to Hillsborough County and were held constitutional as not being arbitrary classifications or violative of §§ 20 and 21 of Art. Ill of the State Constitution. In the instant case the population bracket of Ch. 61-648 refers to Pinellas County. In view of precedents long established, there seems little justification for adopting a different rule for Pinellas County from that which obtains as to Hillsborough County in respect to establishing inferior or subordinate courts therein.
In 8 Fla.Jur., Courts, § 10, on page 282, it is said:
“There are many areas in which the legislature is constitutionally prohibited from enacting special or local laws. However, the establishment of a court is not among the classes of laws which must be of general and uniform operation throughout the state under the Constitution. * * * ” [Citing State ex rel. Bliss v. Blitch (1930) 100 Fla. 809, 130 So. 444 (based on Const. Art. Ill, §§ 20, 21) and Cates v. Heffernan (1944) 154 Fla. 422, 18 So.2d 11.]
In 8 Fla.Jur., Courts, § 11, on page 283, the text reads:
“It is common practice for the legislature to create a court in counties on the basis of population. The act usually provides that a court will exist in counties having a certain minimum population, without specifically designating the various counties affected. It is important to determine whether such legislation is special or general, because special laws must follow various procedures as to publication, notice, or referendum. The rule is that the creation of a court on the basis of population, though its establishment is brought about only in a single county, is constitutional, and may be regarded as a general law and not special or local legislation. * * * ” [Citing State v. Sullivan (1928), 95 Fla. 191, 116 So. 255, and re Rouse (1953, Fla.), 66 So.2d 42.]
I would answer the three certified questions in the affirmative.