Donald C. Evans Attorney for Hillsborough County City/County Planning Commission Tampa
QUESTION:
Do the provisions of the Local Government Comprehensive Planning Act of 1975 (ss. 163.3161-163.3211, F. S.) govern actions taken by governmental agencies in Hillsborough County in regard to development orders or development permits or are such actions subject only to the standards mandated by the Hillsborough County Local Government Comprehensive Planning Act?
SUMMARY:
The provisions of the Hillsborough County Local Government Comprehensive Planning Act, ch. 75-390, Laws of Florida, as amended by ch. 77-564, Laws of Florida, and the Local Government Comprehensive Planning Act of 1975, ss. 163.3161-163.3211, F. S., as they relate to the actions of governmental bodies or agencies in Hillsborough County with respect to development orders, development permits, or any other official action having the effect of permitting the public or private development of land should be read together and harmonized so as to require all such actions to be consistent with the adopted comprehensive plans.
On May 30, 1975, the Legislature passed two bills, both of which became law. The first, ch. 75-257, Laws of Florida, was entitled the Local Government Comprehensive Planning Act (hereinafter LGCPA) and has been codified as ss. 163.3161-163.3211, F. S. The other, ch. 75-390, Laws of Florida, was entitled the Hillsborough County Local Government Comprehensive Planning Act (hereinafter HCLGCPA) and is a special law. The LGCPA became law June 29, 1975, when signed by the Governor (see s. 8(a), Art. III, State Const.) and took effect July 1, 1975 (see s. 9, Art. III, State Const., and s. 19 of ch. 75-257, Laws of Florida). The HCLGCPA was presented to the Governor on June 6, 1975 (see p. 813, Journal of the Florida Senate for the 1975 Regular Session), and became law without his signature 15 days later (see s. 8(a), Art. III, State Const.). The effective date of the HCLGCPA was October 1, 1975.
From a reading of both the LGCPA and the HCLGCPA, it is apparent that the language in and the purpose of the two acts are essentially identical. There are, however, some differences between certain sections of the general and special laws. For example, you have noted that s. 163.3194(1), F. S., provides:
 After a comprehensive plan or element or portion thereof has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted. All land development regulations enacted or amended shall be consistent with the adopted comprehensive plan or element or portion thereof. (Emphasis supplied.)
The counterpart of this provision in the HCLGCPA, s. 14(1), provides:
 After a comprehensive plan, or element or portion thereof, has been adopted in conformity with this act, all development undertaken by governmental agencies in regard to land covered by such plan shall be consistent with such plan as adopted. All land development regulations enacted or amended shall be consistent with the adopted comprehensive plan, or element or portion thereof.
That portion of the LGCPA emphasized above expressly requires actions taken by governmental agencies in regard to development orders to be in conformance with the adopted comprehensive plan.See s. 163.3164(5), F. S., which defines `development order' for purposes of the LGCPA as `any order granting, denying, or granting with conditions an application for a development permit.' And see
s. 163.3164(6), defining `development permit' to include `any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance, or any other official action of local government having the effect of permitting the development of land.' This express reference to governmental actions taken in regard to development orders was omitted from s. 14(1) of the special law; that subsection per se appears to require only that development undertaken by governmental agencies
be in conformity with the comprehensive plan. But see s. 15 of the HCLGCPA which states that
 [i]t is the intent of this act that the adoption and enforcement by a governing body of regulations for the development of land or a land development code . . . for an area shall be based on, related to and a means of implementation for an adopted comprehensive plan as required by this act, and that develpment permits shall be issued in accordance therewith. (Emphasis supplied.)
And see s. 3(6) of the HCLGCPA which defines `development permit' as `any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance or any otherofficial action of a local government having the effect ofpermitting the development of land.' (Emphasis supplied.)
The primary purpose of statutory construction is to ascertain legislative intent and to effectuate that intent, for the intent of the Legislature is the law. This fundamental rule should be followed even if the result appears to be contradictory to other rules of construction and the strict letter of the statute. State v. Williams, 343 So.2d 35 (Fla. 1977); Small v. Sun Oil Co.,222 So.2d 196 (Fla. 1969); Beebe v. Richardson, 23 So.2d 718 (Fla. 1945); American Bakeries Co. v. Haines City, 180 So. 524 (Fla. 1938); and State v. Sullivan, 116 So. 255 (Fla. 1928). In this regard, s. 2 of the HCLGCPA sets out its intent and purpose. Relevant to the issues raised by your request are the following subsections:
 (4) It is the intent of this act that adopted comprehensive plans shall have the legal status set out in this act and that no public or private development shall be permitted except in conformity with comprehensive plans prepared and adopted in conformity with this act. (Emphasis supplied.)
 (6) The provisions of this act in their interpretation and application are declared to be the minimum requirements necessary to accomplish the stated intent, purposes and objective of this act; to protect human, environmental, social and economic resources; and to maintain through orderly growth and development the character and stability of present and future land use and development in this state. Emphasis supplied.)
And see that portion of s. 15 of the HCLGCPA set out above which further states the intent of the act. It seems clear from a reading of the above-quoted section of the HCLGCPA that its scope was not meant to be limited to governmental development, but that it was intended to apply to private development as well.
Another general rule of statutory construction is that two acts passed at one and the same session of the Legislature which deal with the same general subject must be considered as being in parimateria. Tyson v. Stoutamire, 140 So. 454 (Fla. 1931); Amos v. Mathews, 126 So. 308 (Fla. 1930); and chs. 75-257 and 75-390, Laws of Florida, which clearly deal with the same general subject and should, therefore, be considered as being in pari materia. In addition, s. 163.3161(2), F. S., indicates that the LGCPA is intended to be read as conforming to and being in furtherance of the purpose of ch. 380, F. S., the Florida Environmental Land and Water Management Act of 1972. It is the stated purpose of that act `to protect the natural resources and environment of this state . . . [to] facilitate orderly and well-planned development . . . to plan for and guide growth and development within this state.' See
s. 380.021. Furthermore, when two acts are in pari materia, they should be read together and, if possible, so construed as to permit a field of operation for both. Dade County v. City of Miami, 82 So. 354 (Fla. 1919); ex parte Perry, 71 So. 174 (Fla. 1916). As the court stated in the case of Curry v. Lehman,47 So. 18, 21 (Fla. 1908):
 It is to be presumed that different acts on the same subject passed at the same session of the Legislature are imbued with the same spirit and actuated by the same policy, and they should be construed each in the light of the other. The legal presumption is that the Legislature did not intend to keep really contradictory enactments in the statute books, or to effect so important a measure as the repeal of a law without expressing an intention to do so. An interpretation leading to such a result should not be adopted, unless it is inevitable. The rule of construction in such cases is that if courts can, by any fair, strict, or liberal construction, find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation . . . it is their duty to do so.
See also State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68 (Fla. 1975). This general rule of construction also applies when the Legislature has passed both a general and special act concerning the same subject. Such acts should, if possible, be construed together so as to find a reasonable field of operation for each, without destroying their evident intent. Dickinson v. Cahoon, 144 So. 345 (Fla. 1932).
When it is not possible to harmonize two statutes because of an irreconcilable conflict between their provisions, it becomes necessary to determine which shall take precedence. The general rule is that when there is an irreconcilable conflict between a general and special act, the special act will prevail in the absence of clear legislative intent to the contrary. State v. City of Key West, 97 So.2d 615 (Fla. 1957); Beverly v. Division of Beverages of the Department of Business Regulation, 282 So.2d 657
(1 D.C.A. Fla., 1973); and In re Adams' Guardianship, 99 So.2d 723
(2 D.C.A. Fla., 1958). The rationale for this rule is that the special law is a more specific expression of the legislative will.See The Tribune Company v. School Board of Hillsborough County,367 So.2d 627 (Fla. 1979). However, even if I believed a real conflict exists between the general and special laws under consideration, I have no power to declare such a conflict to exist or to say which law would govern in that event or to effectuate an implied repeal or modification of either law. This is a power which is vested solely in the judiciary. However, it is the court's duty (as well as mine) to harmonize or reconcile the laws in question, preserving the efficacy of both laws, if at all possible.
In the instant situation, it is clear from the foregoing that both the LGCPA and the HCLGCPA have as their purpose the same general object — that is, the adoption and enforcement by the affected governing bodies of comprehensive plans for the regulation of the use and development of land. To read a disembodied portion of the HCLGCPA, s. 14(1), and to imply from the omission of a phrase therein that private development is not to be regulated consistent with the adopted comprehensive plan, or that local governing bodies in Hillsborough County are free to disregard the comprehensive plan whenever they are considering applications for private development permits, would be absurd in light of the stated purpose of the act as well as in view of the overall scheme established by the act for the regulation of development. Such a construction, which would lead to an unreasonable or ridiculous conclusion, is not favored. See McKibben v. Mallory, 293 So.2d 48
(Fla. 1974), and Research and Development Industries, Inc. v. Southeast Bank of East Orange, 345 So.2d 811 (4 D.C.A. Fla., 1977).
As I have concluded that the HCLGCPA applies to the private development of land as well as to governmental development and local governing bodies in Hillsborough County are not free to disregard the comprehensive plan when taking action on applications for development permits, the reconciliation of the HCLGCPA and the LGCPA would seem to be obvious. The HCLGCPA, while it does not expressly require in s. 14(1), read in isolation from the act as a whole, that all actions taken by governmental agencies in regard to development orders or development permits be consistent with the comprehensive plan, does specifically declare that no public or private development shall be permitted except in conformity with the adopted comprehensive plans and provides for such compliance in s. 15. Furthermore, s. 2(6) states that `[t]he provisions of this act in their interpretation and application are declared to be the minimum requirements necessary to accomplish the stated intent, purposes and objectives of this act.' (Emphasis supplied.) Consequently, it is my opinion that local governing bodies and their agencies in Hillsborough County may not take any action in regard to development orders, development permits, or any other official action having the effect of permitting the private development of land which would be inconsistent with adopted comprehensive plans.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General